D. E. ALBRIGHT and wife v. G. B. ALBRIGHT and others.

*Homestead—Judgment—Execution.*

1. The provisions of the law, securing a homestead and personal property exemption, are not *necessarily* void as against "old debts," but only so, in case they should defeat their payment in whole or in part. Even against such claims, the debtor has a right to have his allotments made and the excess sold and applied in payment thereof.

2. A judgment on a debt, made since 1868, rendered and docketed before one on a debt made anterior to that time, will not be displaced in favor of the latter, even to save the homestead, but operates as a first lien on the land not included in the homestead.

3. An actual levy of a junior judgment upon the debtor's personal property, though not privileged against the same, entitles the creditor to the fund arising from the sale of the excess; but the $500 exemption of personal property, whether set apart or not, is wholly exempt from the process.

4. The debtor, in such case, whose property was both under mortgage and judgment liens, has an equity to have the same sold to the best advantage, after all parties interested are brought before the court and their priorities determined.

(*Cheatham* v. *Jones*, 68 N. C., 153; *Burton* v. *Spiers*, 87 N. C., 87; *Wilson* v. *Patton*, Ib., 318; *Duval* v. *Rollins*, 71 N. C., 218; *Curlee* v. *Thomas*, 74 N. C., 51; *Mayer* v. *Adrian*, 77 N. C., 83; *Gaster* v. *Hardie*, 75 N. C., 460; *Crews* v. *Bank*, 77 N. C., 110, cited and approved).

MOTION for injunction, in an action pending in GUILFORD Superior Court, heard at Chambers on the 26th of December, 1882, before *Gilmer, J.*

Both parties appealed from the ruling of the court below.

*Messrs. Dillard & Morehead* and *Hinsdale & Devereux*, for plaintiffs.

*Messrs. Scott & Caldwell*, for defendants.

RUFFIN, J. The plaintiff, Daniel E. Albright, complains that by reason of the multiplicity and conflicting character of incumbrances upon his estate, and the machinations of the defen-

dants, George B. Albright and Kirkman, in pressing certain of them to collection, he is in danger of having his property sacrificed, and of losing the homestead and personal property exemption, which it is the policy of the law he should have.   To avoid this, he asks the court in this action to bring all the parties before it to ascertain their respective rights and priorities, to sell the property to the greatest advantage and free of all cloud, and in the meantime to restrain the said defendants from selling under their executions, which they have placed in the hands of the sheriff.

There seems to be so little controversy between the parties as to the facts of the case, that it may almost be said they are admitted to be as follows:

There are five judgments against the plaintiff.   Two of them known as the Edwards and Sharpe judgments, and amounting, together, to the sum of $1,040.19, were rendered upon contracts made prior to 1868, and docketed respectively in December, 1873, and August, 1874.   Three of them, known as the William Albright, the Kirkman and the George Albright judgments, and amounting in the aggregate to $1,830.59, were founded upon contracts made subsequently to 1868, and were all procured and docketed after the two first mentioned judgments.

Besides these debts, the plaintiff owes one of $280 to the defendant, Adams, secured by a mortgage upon certain of his lands, executed and registered in 1871; and another of $105, which was imposed upon his land as a charge to make equality in the division of the lands of his father.   He owns the following real estate:   His home place, consisting of two hundred and forty-seven acres; an undivided third interest in a thirty acre tract, upon which there are grist and saw-mills; and a seventy-six acre tract, subject to the Adams mortgage, and the charge for equality.

In October, 1882, the defendants, George B. Albright and Kirkman, sued out executions upon their judgments, under which they caused the plaintiff's personal property exemption of $500 to be set apart to him, and his homestead, including his dwelling and a hundred acres of his hom-eplace to be allotted.

The excess of his personal property amounting to $64, they then caused to be levied on under their executions and to be sold, and the proceeds is now in the hands of the officer. They also caused the excess in the lands, over and above the homestead, to be levied on under their same execution, and advertised for sale in November of that year.

Before the day of sale, one Ogburn, who, in the meantime, had, purchased the Edwards and Sharpe judgments, caused executions thereunder to be placed in the sheriff's hands and the same lands levied on by the defendants to be advertised for sale.

The defendants thereupon begun an action against him, insisting that as he had two sources of payment (the lands included in the homestead and those in excess thereof) while they had but one (the excess), he should be confined to the former, and not be permitted to defeat altogether the satisfaction of their judgments.

During the pendency of this action against Ogburn, the defendant, Albright, purchased from him the Edwards and Sharpe judgments, and having thus acquired the control of them, the action against him was allowed to drop.

With a view still to secure to himself and Kirkman the advantage sought in that action, the defendant, Albright, has since caused executions to issue under the Edwards and Sharpe judgments, and to be levied upon the personal property which had been set apart to the plaintiff as his exemption, and after laying off to him such articles as are exempted from sale under Rev. Code, ch. 45, §§ 7 and 8, has advertised the residue for sale. The same defendants have also renewed their levies under their junior judgments upon the lands in excess of the homestead, and have advertised them for sale, intending, as the plaintiff alleges, and as is not denied in their affidavits, hereafter to have the homestead sold under the older judgments, and thus deprive him altogether of his homestead and exemptions.

The value of the lands above the homestead is the only controverted fact between the parties: the plaintiff insists that if

fairly brought to sale, they are of value sufficient to pay all, or nearly all, the claims against him, whereas the defendants insist that they are not, at the best, worth more than two thousand dollars, which amount is less than two-thirds of the debts.

The cause being heard at Chambers on the 26th day of December, 1882, upon a motion for an injunction, before His Honor, Judge Gilmer, he granted an order restraining the defendants from selling the personal property levied on under the Edwards and Sharpe judgment, but declined to give an order to restrain the sale of the lands in excess of the homestead under the junior judgments, in favor of the defendants, Albright and Kirkman. From this refusal the plaintiff craved an appeal, and from the order restraining the sale of the personalty the defendants appealed.

The plaintiff has a clear constitutional right to his exemptions in both his realty and personalty, and this right he has against each and every one of his creditors, without regard to the date of his demand. It is a mistake to suppose that the law giving such exemptions is necessarily void, as against debts existing prior to its adoption. It is only so in case there should not be a sufficiency, after allowing the exemptions, fully to satisfy them, whereby they would be defeated. Otherwise, they are as operative and constitutional as to them as against any other demand whatsoever; that is to say, the debtor has a right to have his allotments made, setting apart specifically his homestead and his exemptions, and then to have the creditor, though his claim be an old one, to exhaust all his other possessions of every kind, before he shall put his hands on them. *Cheatham* v. *Jones,* 68 N. C., 153; *Burton* v. *Spiers,* 87 N. C., 87.

It is true, that if a judgment upon a contract, made since 1868, be rendered and docketed before a judgment on a contract made anterior to that date, the courts will not displace it in favor of the latter, even to save the debtor his homestead, but will leave it, as was done in *Wilson* v. *Patton,* 87 N., C., 318, to operate as the first lien upon the lands not included in the homestead.

31

So, too, as in this case, the defendants having by an actual levy under their judgments, though junior in point of docketing, and though not privileged against the plaintiff's right to his exemptions, acquired the first lien upon the personalty, are entitled to the exclusive benefit of the $65 arising from the sale of the excess in that species of property. But as to five hundred dollars worth of personalty, whether set apart or not, the defendants are wholly excluded, and do not even occupy the position of creditors. *Duval* v. *Rollins*, 71 N. C., 218; *Curlee* v. *Thomas*, 74 N. C., 51.

And as to the realty, the Edwards and Sharpe judgments are not only privileged debts, but they constitute the first docketed liens thereon, and are only subject to the plaintiff's right to have them satisfied out of his other property of whatever nature, so as, if possible, to secure him a homestead; and his right to such exemption is to be determined as if those two debts were all he owed.

Such is the plaintiff's plain and inviolable right, and what then is his equity? It is to have his property sold to the best advantage, and so as to derive the most money therefrom, and that this may be done, to have all the parties before the court, their priorities determined, and the property sold free of all clouds and conflicting incumbrances.

The very doubts expressed by the defendants as to the value of the lands give force to this equity of the plaintiff, and furnish a reason why the court should intervene and protect him from the consequences of a sale made uncertain and hazardous by the course which the defendants have pursued in the matter.

In *Mayer* v. *Adrian*, 77 N. C., 83, there was a complication growing out of a number of conflicting liens, and it was held to be peculiarly within the jurisdiction of a court of equity to have all the parties brought before it, ascertain their debts, adjust their equities, and declare their respective rights, in order that the sale, when made, might pass a clean title to the purchaser. It was upon this ground alone that the court assume jurisdiction in

*Gaster* v. *Hardie,* 75 N. C., 460, and the very course recommended to be taken in *Crews* v. *Bank,* 77 N. C., 110.

The court, therefore, thinks His Honor erred in not restraining the defendants from selling any portion of the land, until the rights of the parties could be adjusted, their several priorities ascertained and declared, and the property sold with a clear title, so as to command a fair price; and especially does this course seem appropriate, after the court had assumed jurisdiction as to the personalty.

The order refusing the injunction as asked for by the plaintiff is declared to be erroneous, while that granting the injunction as to the personalty is affirmed, and this will be certified to the superior court of Guilford county, to the end that the injunction, as asked for, may be duly granted and continued until the trial of the cause.

Error.                                     Judgment accordingly.