C. P. VANSTORY v. A. G. THORNTON.

*Evidence—Homestead, Assignability of—Lien of Docketed Judgment—Mortgage Lien—Priorities.*

1. It is not error on the part of the Judge below to refuse to submit an issue offered by a party upon whom the burden rests, where there is no evidence to support it.

2. In an action by one member of a firm against another, a receiver was appointed. He was directed to pay a judgment against the firm out of the partnership assets in his hands. He failed to do so : *Held*, that the judgment might be enforced against the individual property of the partner at whose instance the receiver was appointed, it not appearing that the failure of the receiver to satisfy the judgment was due to any act or default of the creditor.

3. A docketed judgment is a lien on all the land of the debtor in the county where docketed from the date of the docketing, and the creditor may presently enforce the same on all the debtor's land outside of the homestead boundaries, but must await the termination of the homestead estate to subject the land to which it pertains, and no act of the debtor can change or impair the creditor's rights under such lien. (*Leak* v. *Gay*, 107 N. C., 468, overruled).

4. The homestead right, estate or "advantage" is salable or assignable, and the purchaser can hold the land to which it pertains to the exclusion of an ordinary senior judgment creditor until that right, estate or "advantage" terminates. (*Adrian* v. *Shaw*, 82 N. C., 474; *Jones* v. *Britton*, 102 N. C., 166; *Lane* v. *Richardson*, 104 N. C., 642; *Long* v. *Walker*, 105 N. C., 90, and other cases of similar import cited and approved. *Dictum* in *Fleming* v. *Graham*, 110 N. C., 374, withdrawn, CLARK, J., dissenting).

5. A judgment debtor who, subsequent to the docketing of the judgment and with the joinder of his wife, if married, mortgages land, including his homestead, and fails to pay the judgment and mortgage debts, loses his land outside of the homestead because it must be devoted to the discharge of the judgment lien; he also loses his right to use the homestead land, because by proper deed he has assigned it to the mortgagee who acquired all his rights to the homestead estate or "advantage."

6. Therefore, where, in an action to which a judgment creditor, junior mortgagees and the judgment debtor were all parties, and the purpose of which was to foreclose the mortgages as well as to re-appraise and re-allot the homestead by reason of improvements having been put thereon making it worth much in excess of $1,000, it was consented that the land should be sold and the fund distributed by the Court according to the respective claims and liens of the parties, and it was further conceded that the land would sell for more than $1,000, and that the excess over that sum should represent what the land outside of the homestead would have brought if the homestead had been actually allotted and the excess sold: *Held*, (1) that such excess must be applied on the judgment which was docketed prior to the registration of the mortgages; (2) that the sum of $1,000, which represents the newly allotted homestead, remains subject to the lien of so much of the judgment as may not be satisfied by the application of the excess over $1,000 of the proceeds of the sale, but it cannot be applied to the satisfaction of such lien until the termination of the debtor's exemption rights; (3) until such termination the fund representing the homestead will be invested under direction of the Court, and the interest accruing thereon will be applied on the mortgage debts according to the priority of liens, and any remainder of the *corpus*, after paying off the judgment, will be used to pay off any balance remaining due on the mortgages. (CLARK, J., dissenting).

7. The Courts having no rule by which to determine the present value in cash of exemption rights, the present division of a fund representing such exemption, if desired, must be attained by arbitration or agreement among the claimants.

CIVIL ACTION, tried before *Winston, J.*, at November Term, 1892, of CUMBERLAND Superior Court.

This is the same cause tried on demurrer (110 N. C., 10). The demurrer having been overruled, the defendant put in an answer; and certain other persons, to-wit, H. W.

Lilly and R. T. Gray, executors of E. J. Lilly, W. P. Wemyess, H. W. Lilly and C. L. Bevil, and W. A. Vanstory, all mentioned in the answer as mortgagees of defendant Thornton's homestead property, sought to be subjected to the plaintiff's debt, were, on their motion, allowed to come in and were made parties defendant, and adopted the answer of Thornton.

The following issues were submitted to the jury:

1. Is the plaintiff the owner of the debt sued on?

2. What is the value of the property sued for?

On submitting these issues his Honor remarked that if, in the progress of the trial, additional issues were deemed proper by the Court, they also would be submitted.

Plaintiff's debt was a judgment rendered in his favor against J. A. Lambeth and A. G. Thornton, in an action brought by Thornton against Lambeth to close a partnership between them, and for an account and settlement, in which action C. P. Vanstory, a creditor of the firm, was admitted to be made a party defendant, and recovered judgment for $978.20 with interest from 1st April, 1887, which was duly docketed 6th May, 1889, in Cumberland Superior Court. In the same action judgment was rendered in favor of Thornton against Lambeth for $595.56. Neill McQueen, Sheriff of Cumberland county, had been appointed receiver in the cause, to take charge and collect the partnership effects—and in favor of Vanstory it was adjudged by the Court:

"That C. P. Vanstory recover of said partnership of J. A. Lambeth and A. G. Thornton, trading as J. A. Lambeth, the sum of $978.20, with interest from April 1st, 1887. The receiver will pay over to said C. P. Vanstory the sum of money in his hands not in excess of costs and expenses." *Thornton* v. *Lambeth*, 103 N. C., 86.

McQueen died in office without complying with the order of the Court, so that Vanstory received no part of the partnership funds, neither has he realized anything under an execution issued upon his judgment.

A. G. Thornton, defendant in present case, during the progress of the trial offered evidence tending to prove that at the time of Sheriff McQueen's death there was in his hands, as receiver, after deducting all charges, the sum of $575.75 of partnership funds applicable to plaintiff's judgment, to which Vanstory was entitled under the order of the Court, and the defendant A. G. Thornton asked his Honor to submit a third issue to the jury arising under the first article of the answer, viz.:

3. Whether the plaintiff's judgment was satisfied in whole or in part, and, if in part, to what amount?

The contention of defendant was that, whether that sum was received or not by Vanstory, yet, being in the hands of the receiver, under the control of the Court, and ordered to be paid upon the Vanstory judgment, there was a satisfaction of the judgment *pro tanto* and an exoneration of the defendant's homestead to that extent.

His Honor dissented from this view of the law, refused to submit the proposed issue, and excluded the evidence as immaterial.

Defendant A. G. Thornton excepted.

The jury responded to the first issue, "Yes"; and to the second issue, " *More than the homestead.*"

A new trial was asked for by defendant Thornton on account of alleged error, as to which exception was taken and noted on the trial.

Motion for new trial refused. Judgment signed and entered of record, conforming to the precedent in *Leak* v. *Gay*, 107 N. C., 468. To this judgment the defendant Thornton excepted, claiming that after the payment of the

costs and mortgage debts, no part of the funds arising from the sale of his homestead should be paid to the plaintiff, but the balance should be paid to him. Exception overruled, and defendant Thornton appealed.

The plaintiff also excepted to the judgment, and appealed. His exception is set out in the opinion.

The following is the judgment appealed from :

"This cause having been brought to a trial before the Judge and a jury at the present term, and the jury having found that the house and lot in Fayetteville, claimed as a homestead by the defendant, is worth more than $1,000 in value :

"It is considered and adjudged by the Court that said property be exposed to public sale by commissioners hereinafter appointed by the Court, for cash, the homesteader electing cash instead of land, after four weeks' advertisement in the Fayetteville *Observer*, at the court-house door in Fayetteville, who shall apply the proceeds of sale to the payments of the debts of the defendant, A. G. Thornton, as mentioned in the pleadings, in the following order of priority, after paying—

"*First*—The costs of this cause.

"*Second*—The mortgage debt due the estate of E. J. Lilly, deceased, to his executors, R. T. Gray and H. W. Lilly, to secure note of A. G. Thornton, payable to E. J. Lilly, for $400, dated 30th September, 1889, payable sixty days after date.

"*Third*—The mortgage debt due the estate of E. J. Lilly, deceased, to his said executors, to secure note of A. G. Thornton, payable to E. J. Lilly, for $100, with interest from 4th October, 1889, at eight per cent.

"*Fourth*—The mortgage debt due the estate of E. J. Lilly, deceased, to his said executors, to secure note of A. G. Thornton, payable to E. J. Lilly, for $100, payable thirty days after date—3d December, 1889.

"*Fifth*—The mortgage debt payable to W. P. Wemyss, transferred to H. W. Lilly, to secure note of A. G. Thornton, for $60, dated 16th December, 1889, payable twenty-five days after date, secured by mortgage of same date by A. G. Thornton and wife, Elsie.

"*Sixth*—The mortgage debt due to H. W. Lilly, to secure note of A. G. Thornton to H. W. Lilly for $625, dated 26th February, 1890, due twelve months after date, with interest after date at eight per cent. Mortgage executed by A. G. Thornton and wife, Elsie, 26th February, 1890. Proved and registered 27th February, 1890.

"*Seventh*—The mortgage due to C. L. Bevil and W. A. Vanstory, to secure note of $311, dated 27th May, 1890, due 1st October, 1890.

"*Eighth*—After payment of the foregoing mortgage debts the commissioners shall reserve for the defendant A. G. Thornton his homestead interest to the amount of $1,000, should there be so much left, the annual interest upon which sum to be paid to him during life, and to his widow, should his wife survive him, during her life and the minority of their youngest child.

"*Ninth*—The judgment of plaintiff against the defendant, docketed 6th May, 1889, for $978.20, with interest from 1st April, 1887, and costs thereon, $14, should there be so much left.

"*Tenth*—The residue, if any, to be paid to defendant.

"R. P. Buxton and Thomas H. Sutton are appointed commissioners of sale. Commissions five per cent.

"The respective parties are allowed to bid to the extent of their respective interests without paying cash, except so far as will meet the costs and prior claims in the order mentioned."

*Mr. T. H. Sutton*, for plaintiff.
*Mr. R. P. Buxton*, for defendant.

BURWELL, J. : This case comes to us upon the appeal of the plaintiff, who is the judgment creditor, and of the defendant Thornton, who is the judgment debtor. The mortgagees, who have come into the action of their own motion, since it was last before the Court (110 N. C., 10), and have been made defendants and have adopted the answer of the defendant Thornton, did not appeal.

We will first consider the refusal of his Honor to submit the issue tendered by Thornton relative to the alleged payment, in whole or part, of plaintiff's judgment.

This issue was tendered by him with the evidence which he insisted tended to establish that such payment had been made. He did not contend that he could produce other evidence bearing upon it. It would have been an idle thing to submit such an issue, the burden of which was upon defendant, and at the same time tell the jury that defendant had no evidence to support it.

And his Honor correctly decided that the facts put in evidence did not prove that any payment had been made on the judgment, or that it had been satisfied in whole or in part. There was no offer to prove that plaintiff had actually received from the receiver in *Thornton* v. *Lambeth* (103 N. C., 86) any money to be applied on this judgment, or that his failure to get it was due to his own fault or negligence. That receiver was appointed at the instance of the defendant to take charge of the partnership assets (*Thornton* v. *Lambeth, supra*), and if, without any neglect on his part, the plaintiff failed to get what the judgment of the Court in that cause directed the receiver to pay him, the loss must fall on the defendant (the plaintiff there), whose duty it was to see that the money he owed was in fact paid.

The amount due to plaintiff on his judgment being thus fixed, we come to the consideration of his exception to the judgment, which is as follows: "To this judgment the

plaintiff, C. P. Vanstory, excepted, claiming that after the payment of costs his judgment for $978.20, with interest from April 1, 1887, docketed May 6, 1889, was entitled to priority over all the mortgage debts, being older, and should be paid in full before any of the proceeds of sale should be applied to any of said mortgages."

And in this connection we will also consider the defendant's exception to this judgment, "claiming that after the payment of the costs and mortgage debts, no part of the fund arising from the sale of his homestead should be paid to the plaintiff, but the balance should be paid to him."

The land, a sale of which is ordered by the judgment appealed from, was allotted to the defendant Thornton as his homestead in April, 1885. The relief which the plaintiff demands is that, for reasons set out in his complaint, there should be "a re-appraisement and re-allotment of the land and improvements of the defendant, to the end that the excess of the homestead, if any, be ascertained, and be subjected to the satisfaction of plaintiff's judgment."

It seems to have been conceded by the eminent counsel of the defendant that under the law as declared when this cause was here on demurrer (110 N. C., 10), and the allegations of the complaint and answer, and the findings of the jury, the plaintiff was entitled to have the re-appraisement and re-allotment demanded by him. We wish, however, to expressly exclude the conclusion that a re-allotment should be decreed in suits like this one, upon the finding of the jury that the allotted land is worth "more than a homestead"; that is to say, more than one thousand dollars. To accomplish that result, much more must be established by the plaintiff, according to the opinion filed by the late Chief Justice MERRIMON in this cause (*supra*), to which we adhere.

Assuming, then, that the parties to this action (which, by the presence of the defendant mortgagees, has become a suit to foreclose their mortgages as well as to re-appraise and re-allot the homestead upon the demand of the plaintiff, and for the reasons set out in his complaint) have consented that a sale of the whole lot shall be made, the purchaser acquiring a title free from all of their claims or liens, and that their respective claims to the fund to be brought into court, the proceeds of the sale, shall be measured and determined by their respective claims and liens on the land, we are required to determine how that fund shall be distributed.

This agreement, or concession, of the parties, that a sale of the whole lot shall be made without a re-allotment of the homestead of Thornton, involves, of course, the further concession or agreement that what the lot brings over one thousand dollars shall represent what the excess over the homestead would have brought if the homestead had been re-allotted, and the excess had then been sold, and it also involves the further concession or agreement that the re-allotted homestead would have sold for one thousand dollars.

If, therefore, after the payment of the costs (to the payment of which, first, no party excepts) there shall remain more than one thousand dollars, that excess will represent and stand in the place of the portion of the lot which, upon a re-appraisement, would lie outside of the homestead boundaries, and this excess of the fund over one thousand dollars (the homestead) must be applied on the plaintiff's judgment, for it was docketed before any of the mortgages were registered, and it is a first lien on this excess (*Gulley* v. *Thurston*, at this Term), enforceable now because of the re-allotment of defendant's homestead. The statute (*The Code*, §435) makes a docketed judgment a lien on all the land of the debtor in the county where it is docketed from

the date of the docketing, and the creditor may immediately enforce his lien so acquired on all the debtor's land outside of the boundaries of the homestead. Such are his rights. They are plain and unmistakable. No act of the debtor can change them, or in any degree impair them. To hold otherwise would be to displace, by our decision, a lien given by the statute, and to put it in the power of a judgment debtor to deprive his diligent creditor of the fruits of his diligence.

We hold, of course, that if, after the full payment of plaintiff's judgment, any part of this excess shall remain, it shall be applied on the mortgage debts according to their priorities.

This brings us to determine what disposition shall then be made of the homestead money, the sum which represents and stands in the place of the newly allotted homestead, and to which none of the parties waive any of their claims or modify in any degree their legal rights.

We must first discuss the relation of the plaintiff to this fund, for it may be that the excess over one thousand dollars will not be sufficient to pay all costs and his judgment.

In some States a docketed judgment creates no lien on the homestead land, but in this State such a judgment creates a lien on *all* the land of the debtor, both that outside of the homestead boundaries and that within those boundaries, the only difference being that the lien on that which is within the homestead boundaries is not enforceable by execution or other final process until there has come about in some way a termination of the debtor's constitutional exemption rights in this land, which rights, vested in him by the organic law, may be prolonged after his death for the benefit of his widow in some instances and in some for the benefit of infant children. As we have said, he cannot now enforce his lien on the homestead land, but his debtor

cannot displace that lien by any act of his.　It is fixed on the land by law, and this Court can only recognize and at the proper time enforce it.

We conclude, therefore, that the plaintiff has a lien on this fund ($1,000) for the payment of such part of his judgment as is not satisfied by the excess over the homestead money, but, if the other parties interested in this fund so insist, he must await the termination of Thornton's exemption rights in this fund before he can get for his own use any part of it.　When those rights have terminated, such part of this principal fund as may be necessary will be applied to the satisfaction of the plaintiff's judgment.　In the meantime it will be invested as the Superior Court of Cumberland County may direct, and the interest accruing thereon will be applied on the mortgage debts, paying the senior mortgage first and then the next oldest, and so on. Any remainder of the *corpus* after satisfaction of the judgment will be used to pay off any balance then due on the mortgage indebtedness.　The defendant Thornton can have no part of this fund until both the judgment and the mortgages are paid off in full.　He loses the land outside of his re-allotted homestead, because it must be devoted to the discharge of the judgment lien thereon.　He loses his right to use the homestead land or the money that stands in its place, because by proper deeds he and his wife have assigned that land to the mortgagees; thereby they acquired all his rights to this lot, his homestead estate therein, as it is sometimes called.　*Adrian* v. *Shaw,* 82 N. C., 474; *Simpson* v. *Houston,* 97 N. C., 344.　Therefore they take his place in relation to the fund ($1,000) which stands in lieu of the exempt land, and must be allowed to hold that place to the present exclusion of the judgment creditor.

We feel bound to follow the decisions cited above, and others of like import made by our distinguished predeces-

sors, because rights have been acquired and contracts have been made on the faith of those adjudications.    To disturb them at this late day would bring about confusion and cause injustice in many instances.    We prefer to recall the *dicta* in *Fleming* v. *Graham*, 110 N. C., 374, which seem in conflict with those older cases.

We are not unmindful of the fact that perplexing problems will arise in the adjudication of rights in and titles to lands, to which at one time or another there has attached that peculiar right called a "homestead," whether we adhere to the old rule laid down in *Adrian* v. *Shaw* and cases of like import or adopt the new rule foreshadowed in *Fleming* v. *Graham, supra*.    One thing at least should be distinctly realized : The two rules, on principle, are in direct conflict one with the other.    By the one the homestead right or estate, or exemption from execution, or "advantage," call it by what name we will, is salable or assignable, and the purchaser can hold the land in which he has acquired this right or estate, or exemption from execution, or advantage, to the exclusion of the ordinary judgment creditor of his assignor or seller till that right or estate, or advantage, or exemption from execution, "is over."    By virtue of the assignment (usually made in the form of a deed to the land itself, the greater including the less) he gets into the shoes of the homesteader, to use a homely expression. He has bought the privilege of so standing, the privilege of personating before the law and the judgment creditor the "homesteader" himself, *quoad* the homestead land.    And we think that the assignability of this right, as contradistinguished from the land itself, has been distinctly recognized by all the decisions of this Court until that of *Fleming* v. *Graham*.    It is true that there has been much discussion as to the name that should be applied to this new creation of the law.    Justice DICK called it in *Poe* v. *Har-*

*die,* 65 N. C., 447, "the estate in the homestead," "a deter-
minable fee," and called its counterpart "the reversionary
interest," the two constituting all the estate of the owner of
the land.   Chief Justice PEARSON called it "the homestead
estate," and its counterpart "the reversion," and notably in
*Jenkins* v. *Bobbitt,* 77 N. C., 385, though in *Littlejohn* v.
*Egerton,* 77 N. C., at page 384, he had spoken of the "home-
stead right" as a quality annexed to land whereby an
estate is exempted from sale under execution for debt.   Jus-
tice BYNUM, in *Bank* v. *Green,* 78 N. C., 247, defined it as "no
new estate," but only "a determinable exemption from the
payment of his debts in respect to the particular property
allotted to him."   And the same Court in *Hill* v. *Oxendine,*
79 N. C., 331, distinctly recognized the "homestead" as
distinguished from the "reversionary interest," and with
equal distinctness conceded the assignability of each of
these rights or interests separately.

Chief Justice SMITH, in *Markham* v. *Hicks,* 90 N. C., 204,
approved the definition or description contained in *Bank*
v. *Green, supra,* and called attention to the "inadvertent
expressions" which had been used in defining the right
under discussion; but there was no intimation from him
in that case that it was not assignable.

Chief Justice MERRIMON, in the case of *Jones* v. *Britton,*
102 N. C., 166 (on page 169), speaks of this quality of
exemption as an "advantage" which can pass by proper
deed from the homesteader to his vendee of the land, and in
unmistakable language recognizes that this "advantage"—
this exemption from sale, limited contingently—may be
acquired and held by the vendee of the land to the post-
ponement of the rights of the judgment creditor.   He there
emphatically approved the rule laid down in *Adrian* v.
*Shaw, supra,* by Justice ASHE, which had been approved
with even greater emphasis by Chief Justice SMITH on the
rehearing of the latter case (84 N. C., 832).

And in *Lane* v. *Richardson*, 104 N. C., 642, it is said of homestead land that had been sold by the homesteader that it "retained the quality of the homestead exemption in the hands of the purchaser." In *Long* v. *Walker*, 105 N. C., 90, the cases of *Wyche* v. *Wyche*, 85 N. C., 96, *Barrett* v. *Richardson*, 76 N. C., 429, and *Lowdermilk* v. *Corpening*, 92 N. C., 333, are cited with approval, and the principle that in this State what is there again called the " reversionary interest" in the homestead land may be owned by one person while the homestead interest or estate is held by another, is distinctly recognized.

In Waples on Homestead and Exemption, p. 299, it is said: "There may be a suspended judgment lien on a homestead; as when the statute allows judgments to be docketed against it but prevents their enforcement during the time the homestead remains exempt, yet allows execution afterwards. Meanwhile, the exemptionist may sell the land on which the benefit rests, subject to the judgment but also protected for the time being by the suspension of the lien. The purchaser acquires this protection with the land so far as the homestead extends with the land." In support of this the learned author cites *Jones* v. *Britton, supra; Rankin* v. *Shaw*, 94 N. C., 405; *Markham* v. *Hicks*, 90 N. C., 204; *Wilson* v. *Patton*, 87 N. C., 318, and *Hinson* v. *Adrian*, 86 N. C., 61.

It is not our privilege to consider the choice between these two rules (that of *Adrian* v. *Shaw* and *Jones* v. *Britton* establishing the assignability of the homestead estate or right, or advantage, and the one proposed in *Fleming* v. *Graham* denying that assignability) as a new question. If such was the case we might find much perplexity in the consideration of the Constitution, which seems to provide for a sale by the homesteader and his wife of the homestead lands, and the statute law, and the decisions of this Court,

which beyond all question make a docketed judgment a
lien on the homestead land, a provision that is in force in
few of the States except this.   It may be said in this con-
nection, however, that it would be difficult for one to see
what value or efficacy there would be in a power of sale,
if the exercise of the power brought to the purchaser only
the poor privilege of witnessing an execution sale of his
newly acquired land.   And in truth it matters not so
much what we call as how we protect and enforce this
" right " or " estate."   It may be that inadvertent expres-
sions have been used in the effort to adapt the nomencla-
ture of the common law to a matter unknown to that sys-
tem of jurisprudence.   But through all the decisions of
this Court down to the case of *Fleming* v. *Graham, supra,*
will be found, we think, upon careful examination, a clear
recognition of the fact that this " advantage," as Chief Jus-
tice MERRIMON aptly called it, is assignable, and that the
purchaser of the land from the homesteader may hold that
" advantage."   Therefore when we affirm *Adrian* v. *Shaw,*
*Simpson* v. *Houston,* and cases of like import, we are but
affirming *Jones* v. *Britton,* decided so late as 1889, and, as
we think, we go counter to no decision or *dictum* in the
Reports of the decisions of this Court, except what is said
in *Fleming* v. *Graham, supra.*

If there is to be any present division of this fund between
the parties, it must be a matter of arbitration or agreement
among themselves, for the Courts have no rule by which to
determine what exemption rights are worth in cash, their
present value, the length of their duration depending on
too many contingences.

The case of *Leak* v. *Gay,* 107 N. C., 468, so far as it
decides or seems to decide that the lien of a docketed judg-
ment on the debtor's land, whether on an allotted homestead
or not, can be displaced by a junior mortgage, is overruled.

The fund arising from a sale of the lot described in the pleadings must be disposed of · in accordance with this opinion, unless otherwise agreed by all the parties in interest.

Judgment modified. In plaintiff's appeal there is error. In defendant's appeal there is no error.

CLARK, J., dissenting: There is a distinction between the homestead and the homestead right: the former is the lot of land exempted from sale; the latter is the right to have it exempted, to use and occupy it free from molestation. The former the Constitution permits to be conveyed, but only with the wife's assent and privy examination; the latter cannot be conveyed to another; it does not pass by a conveyance of the land; it is not property, but a personal privilege extending (in certain cases) to the minority of the children and the widow. An inadvertence of expression in some of the opinions as to this distinction has led to some confusion and misapprehension. It seems that North Carolina is the only State in which it has ever at any time been held that a conveyance by the debtor of the homestead carried with it an assignment of the homestead right. Waples on Homestead, 327, note 5, and 374, note 4; *Brame* v. *Craig*, 12 Bush., 404. And upon the plain language of the Constitution, upon the weight of our own later decisions, and the reason of the thing, it is difficult to see how the assignability of the homestead right can be maintained here. Concurring as I do as to the rest of the opinion, I must, therefore, dissent from so much of it as holds that, as to the proceeds of the sale under a mortgage of the homestead, the lien of a prior docketed judgment is displaced in favor of the mortgagees under the subsequently executed mortgages, during the life of the homesteader.

The opinion of the Court, in this case, says, "The statute law and the decisions of this Court, beyond all question, make a docketed judgment a lien on the homestead land." In *Jones* v. *Britton*, 102 N. C., 166, the opinion of the Court in chief (by MERRIMON, J.) says, "Exemption from sale alone distinguishes the homestead lands from other lands of the debtor." It seems to me it inevitably follows that when by the mortgage and sale under it the "exemption from sale" is lost, the lien of the prior docketed judgment takes precedence in the proceeds over the subsequent mortgage, as would be the case with "the other lands of the debtor" from which it is no longer distinguished by an "exemption from sale."

To obtain a clear conception of the effect and extent of the homestead exemption in this State it is best to have the constitutional provision before us. It reads: "Every homestead, and the dwellings and buildings *used* therewith, *not exceeding in value one thousand dollars,* to be selected by the *owner* thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwellings and buildings used thereon, *owned and occupied by any resident of this State,* and not exceeding the value of one thousand dollars, shall be *exempt from sale* under execution, or other final process obtained on any debt." Const., Art. X, sec. 2.

An analysis of this clause will show, among others, the following requisites to the homestead claim:

1. The claimant must "own and occupy" it.

2. He must be a resident of the State.

3. The lot protected as a homestead, with buildings thereon, must not exceed in value one thousand dollars.

4. No estate in the homestead is granted, but the lot so set apart is merely *protected* for the time specified (during owner's life and until his youngest child becomes of age);

*i. e.*, it "shall be exempt from sale under execution," nothing more.

5. By Article X, section 8, the homesteader is authorized. to convey the homestead with the privy examination of the wife.

Considering the whole of the provisions in Article II, *supra*, which creates the homestead, it is clear that the authority to convey the same is the authority to convey the lot over which the homestead exemption has been extended, and not the homestead exemption itself, which is a right personal to the debtor and not capable of alienation. The word "homestead" in section 8 is used in the same sense it bears when used as the first word in section 2; *i. e.*, the lot or home place, which is authorized to be made exempt. When the homestead is conveyed, the grant is only of *the lot* which has been sheltered from execution so long as it was "owned and occupied" by him. It passes by his conveyance out from under such shelter and becomes liable to any lien which would have been enforced against it but for the exemption which he waived by the conveyance. The homesteader does not and cannot part with his constitutional right to claim a homestead exemption from execution. He can, immediately after the conveyance of the homestead lot, spread its protecting ægis over any other lot owned and occupied by him.

Whenever the claimant ceases to "own and occupy" a lot it ceases to be entitled to the exemption from execution. The constitutional requisite is gone. He may occupy it by a tenant, for the tenant's occupancy is his. But when by deed, with his wife's privy examination, he conveys it away, the grantee gets the grantor's whole interest subject to liens, but without exemption from execution, which exists only in favor of the *owner and occupier* of the lot. He does not "own and occupy" it after the conveyance to another. In

like manner, should he cease to be a *resident* of the State, the right of exemption would cease (*Finley* v. *Sanders*, 98 N. C., 462), even when he leaves his wife and children here. *Baker* v. *Leggett*, *Ibid.*, 304; *Munds* v. *Cassidey*, *Ibid.*, 558, and *Lee* v. *Mosely*, 101 N. C., 311. So when, by reason of the improvements he shall place upon it, the value violates the Constitution by exceeding $1,000, the exemption ceases as to the excess, and there may be a re-allotment, *Vanstory* v. *Thornton*, 110 N. C., 10. Now, also, by the recent act of the Legislature (of 1893) the exemption ceases as to the excess and there may be a re-allotment, when for any cause there is a substantial enhancement of the value of the lot beyond the constitutional $1,000 limit.

It is true it was held in *Adrian* v. *Shaw*, 82 N. C., 474, and same case, 84 N. C., 832, that the homestead right was an estate in the lot, but that was not warranted by the Constitution which confers only "an exemption from sale under execution" (in favor of a resident owner and occupier), and has been in effect overruled in several cases. *Hughes* v. *Hodges* (AVERY, J.), 102 N. C., 236; *Jones* v. *Britton, Ibid.*, 166; *Fleming* v. *Graham*, 110 N. C., 374, and virtually in divers other cases. The main point in *Adrian* v. *Shaw* was that the homestead did not cease on removal from the State. The contrary is held in cases above recited.

In *Jones* v. *Britton, supra* (on p. 180), SHEPHERD, J., says the homestead right is a mere "stay of execution, nothing more, nothing less." AVERY, J., in *Hughes* v. *Hodges, supra,* points out that *Littlejohn* v. *Edgerton* had been misconceived, and that while the learned Chief Justice had there spoken of the homestead as a "quality annexed to the land," he had immediately explained it by saying "whereby the estate is exempted from sale under execution"; by "estate" meaning the debtor's whole interest. In *Jones* v. *Britton, supra,* MERRIMON, J., as quoted above, says that "exemp-

tion from sale alone distinguishes the homestead land from the other lands of the debtor; that the homestead right creates no new estate, and adds no new right, but "merely suspends a sale." If the homestead right is a mere "stay of execution," "a suspension of a sale," it is a privilege, and cannot be assigned away to another.

Apart from the repeated decisions holding the homestead right not to be an estate in the land or a quality annexed to it, it is clearly not so:

1. The words of the Constitution can by no reasonable construction bear out that idea. Nothing in the land is given. The owner already has that in fee. The Constitution only gives him a right to own and occupy it "exempt from sale." It merely puts up a shelter over him and stays the Sheriff's hand with a "cessat executio."

2. If the homestead right was an "estate" in the land, it would be valued accordingly, and to get the $1,000 the quantity of land allotted would depend upon the age, health, expectancy of life, etc., of the claimant, otherwise the homestead *estate* of some would be more valuable than that of others. But it is the lot and buildings over which the protection is spread, which are to be worth "not exceeding $1,000." This shows that the "homestead" right is the exemption extended as a shelter above the lot, and not an estate in the lot itself.

3. If the homesteader had an estate in the land for his life, the crops or other income from it would be his. But as he has no estate in it, and merely a right to "own and occupy" it free from the presence of the Sheriff, the income and crops are liable to his creditors. *Bank* v. *Green*, 78 N. C., 247. The opinion in this case by Mr. Justice BYNUM is one of very clear conception and one of the ablest discussions of the homestead ever made by the Court. It is well worth the fullest consideration. In it, it is said that

the homestead creates no new right of property, but merely exempts $1,000 of it from sale; that it is "not a determinable fee, but a determinable right of exemption."

4. If the homestead right was an estate in the lot, whenever it was once conveyed away it would be gone forever and the homesteader would henceforth be without right to any homestead. The law surely does not contemplate that, like Esau, he should part with his birthright, or that an unmarried man by sale of his alloted homestead shall deprive his future wife and children of a right to shelter, however much realty he may retain or subsequently acquire.

Being, however, as this Court has repeatedly held, not an estate but an exemption, the sale of the lot does not carry the exemption along with it. If it did, either—

1. The homesteader could forever thereafter claim no other exemption; or,

2. He could take another homestead lot and impart to that the exemption quality or estate and convey it together with the exemption tacked to it, and so on *ad infinitum.* Suppose in this way a debtor has successively taken and then conveyed away, say, a dozen homesteads; the day the homestead right determines by his death (or youngest child becoming of age after his death) $13,000 of real estate would become subject to sale under executions docketed prior to his successive conveyances. Thus, up to that event, $13,000 would be exempt from executions against him. Yet there is the constitutional provision, too plain to be misunderstood, that "not exceeding $1,000 shall be exempt from sale under execution."

This is not the argument *ab inconvenienti.* It is the plain, simple language of the Constitution, nothing added and nothing taken from it. The argument *ab inconvenienti* is made by the opposite side that it is hard to tie a man down to one homestead, and that he is merely taking the pro-

ceeds of the sale of one homestead with which to buy another, and so on down the line of successive homesteads. If this argument *ab inconvenienti* could be entertained against the express language of the Constitution, it may be observed—

1. The homesteader is not compelled to sell; he may rent out, and thus still "own and occupy," and with liberty to rent for himself another home.

2. The homestead, or life right, in a $1,000 lot will not bring him the $1,000 the fee-simple is worth, and when he proceeds to take another $1,000 lot as a homestead, he is adding money due his creditors to the exemption allowed, and in several successive sales of a life right in one $1,000 lot and the purchase of the fee-simple of another $1,000 lot, he will put in largely more than the "$1,000 exempt from execution," beyond which amount he is forbidden to go.

Besides, he can convey the homestead right (if it is true it can be conveyed) to his grantee in no better plight than he himself held it. If he puts improvements on the homestead, it is subject to re-valuation. *Vanstory* v. *Thornton*, 110 N. C., 10. Will it not be subject to re-valuation if his grantee puts improvements on it? He can convey no greater exemption right than he had. And it is surely not public policy that where a man has conveyed several successive homesteads each shall lie dead, deprived of improvements for fear of re-allotment.

Again, while the homestead is in possession of the homesteader, the incoming crops are liable to his debts. He has only the right of use and occupancy. *Bank* v. *Green, supra*. As he can convey no greater exemption to his grantee than the law has given himself, it follows that the crops and income from each of the successive homesteads is liable to the grantor's debts, and the temporary holders can only have the right to use and occupy.

And still again, under the late act of the Legislature the lots protected from execution by right of the homestead are subject to re-valuation whenever they "exceed $1,000." When there have been successive homesteads allotted the creditors can have them re-allotted under the act, and if the aggregate amount "exempt from execution" exceeds $1,000, a re-allotment would expose the excess to sale, leaving only the $1,000 then "owned and occupied" by him sheltered from the Sheriff. He cannot give to the successive grantees an exemption of the crops, and from re-valuation, which he himself does not possess.

The decision in *Adrian* v. *Shaw* ceased to have any logical force when the Court held, as it has since repeatedly done, *ut supra*, that the homestead right was not an estate in the land, but a mere exemption, or *cessat executio*. If so, it is personal to the debtor and he cannot convey it away. He can convey away the homestead land. If there are no judgments or other liens, he can give a clear title; if there are such liens, he can convey only his title, subject to the liens, since he waives, as he is empowered to do, his homestead right to protect that lot of land from sale, because ceasing by his deed, with his wife's assent, to "own" it. He can acquire as many successive homesteads as he pleases and protect them by the homestead right, but as to each the homestead right ceases when he ceases, respectively, to own them. He has but one homestead right. He can put that up over successive lots of $1,000, but he cannot alienate it or give any one else the benefit of it.

That the right is restricted to ownership of the lot is further shown by section 3 of Article X, which exempts the homestead "after death of the owner thereof during minority of his children," and section 5 for the benefit of widow of "owner of a homestead," meaning the homestead

of which he was owner at the time of his death. Both these sections extend the exemption after the death of the owner of a homestead, showing that only one homestead is exempted longer, and that is the one he owns at his death. Certainly the conveyance of a homestead cannot possibly be construed to embrace the existence of the homestead right after the homesteader's death, for that contingent right is solely for shelter of his children or widow and is only given as to a homestead of which he is owner at the time of his death. The children can have it allotted if he has not done so. It is theirs, not his. Yet if one homestead right is not assignable by the homesteader, is there anything to indicate that the other is? As was noted in a former decision of this Court, the homestead having been introduced by the Constitution of 1868, it was new to our Courts and the construction given to it has not been uniform. In at least ten points the first view taken has been subsequently overruled.

1. The Court held the exemption applied to pre-existing debts, *Hill* v. *Kesler*, 63 N. C., 437, and numerous other cases. This has not been so since *Edwards* v. *Kearsey*, 96 U. S., 595.

2. It was held that the homesteader might be estopped to claim it by his declarations. *Mayho* v. *Cotten*, 69 N. C., 289. This was expressly overruled in *Hughes* v. *Hodges*, 102 N. C., 236, which affirms the contrary to be the law since *Lambert* v. *Kinnery*, 74 N. C., 348.

3. It was held that the homestead was a "determinable fee." *Poe* v. *Hardie*, 65 N. C., 447. This is overruled in *Bank* v. *Green*, 78 N. C., 247.

4. It was held not impeachable for waste because a determinable fee. *Poe* v. *Hardie*, *supra*. In *Jones* v. *Britton*, 102 N. C., 166, it is now held that the creditor can, by injunction, restrain waste.

5. It was held that the amount could be increased (though not diminished). *Martin* v. *Hughes,* 67 N. C., 293. In view not only of the constitutional provision that it "shall not exceed $1,000," but of the provision limiting the duration of the homestead exemption to the minority of the children, this was reversed in *Wharton* v. *Taylor,* 88 N. C., 230, and the act which had been passed prohibiting the lien of the docketed judgment on the lot sheltered by the homestead was repealed at the next session of the Legislature. Acts 1885, ch. 359.

6. It was held that the homestead was not absolutely void as to debts contracted prior to the constitution, but only if it appeared there was not property sufficient outside of the homestead. *Albright* v. *Albright,* 88 N. C., 238; *Morrison* v. *Watts,* 101 N. C., 332. This was reversed in *Long* v. *Walker,* 105 N. C., 90.

7. In *Adrian* v. *Shaw, supra,* it was held that the homestead was not forfeited by the homesteader's removal from the State. It is held otherwise in *Finley* v. *Sanders,* 98 N. C., 462, and other cases *supra.*

8. It was held that once allotted the homestead could not be re-allotted. *Gulley* v. *Cole,* 96 N. C., 447. This was in part reversed by *Vanstory* v. *Thornton,* 110 N. C., 10, and is now entirely changed by the Act of 1893.

9. In *Adrian* v. *Shaw* it was held that the homestead was an estate in the land. In repeated decisions above cited that has been reversed, and it is held a mere exemption right.

10. In same case it was held the conveyance of the homestead land carried with it the homestead exemption of the debtor. This was denied in *Fleming* v. *Graham, supra.*

Reverting to the plain letter of the Constitution, and taking the benefit of the "sober second thought" of the

Court in each of the above particulars, we are fortunate in finding the way cleared for us. Upon those decisions, as held in the overruling and later opinions in each particular, we should hold, first, that the homestead does not apply to debts existing prior to the Constitution; secondly, that the homesteader cannot be estopped to claim it; third, that it is a determinable exemption, not a determinable fee; fourth, that waste thereon can be restrained on application of a creditor; fifth, that it cannot be increased beyond $1,000, nor can the judgment creditor be deprived of his lien on it by any legislation; sixth, that it is void as to debts existing at the adoption of the Constitution whether there is enough other property or not to satisfy executions; seventh, that it is forfeited when claimant ceases to be a resident of the State; eighth, that when, by improvements placed upon it, or by enhancement of values, it exceeds the constitutional limit of one thousand dollars, it can be re-allotted; ninth, that the homestead is not an estate in the land, but a mere exemption from sale, and tenth, the conveyance of the homestead land does not alienate or convey the homestead right therewith. *Fleming* v. *Graham*, 110 N. C., 374. The grantee gets the land subject to liens and without benefit of the grantor's homestead right, which protected it only while owned by him.

Adhering to the law thus mapped out for us by the latest decision in each particular case recited, the road for the future would be free from embarrassments. We have but to march where the wisdom and experience of our predecessors have pointed out the road.

There are numerous decisions in other States confirmatory of these views. Waples on Homestead. But the constitutional provisions in different States as to the homestead are so variant it is doubtless better to place ourselves on the plain provisions of our own Constitution and avail ourselves

of the latest and better opinion of the Court in construing each point above discussed.     It may be objected that it will work damage to hold as indicated in *Fleming* v. *Graham*, since land has been conveyed under the ruling in *Adrian* v. *Shaw*.     But there cannot be many such conveyances, both because people are not prone to buy estates determinable on the death of another, and because *Adrian* v. *Shaw* has been shaken by so many decisions since.     Were it otherwise, the Constitution is the sole creator of the homestead.     *Edwards* v. *Kearsy, supra*.     The Legislature (as has been held) itself cannot enlarge it, "nor can the Courts do so by judicial legislation."     SMITH, C. J., in *Jones* v *Britton, supra*.     When a mistake has been made the Court should conform its erroneous opinion to the Constitution, and not the Constitution to its erroneous ruling.

A difference should be noted between the homestead and the personal property exemption.     The articles embraced in the latter are owned absolutely, and can be sold absolutely.     No "exemption" is conveyed to the purchaser. There can be no lien on them whose enforcement is prevented by the exemption.     They stand just as the conveyance of the homestead when no lien has attached by a docketed judgment, when, of course, the grantee gets the full estate.     *Hughes* v. *Hodges, supra; Scott* v. *Lane*, 107 N. C., 154.     But as to the homestead, when there are docketed judgments, the debtor has only the privilege of "use and occupancy"; he can only convey it as he would any other land, *i. e.*, subject to such lien, and he cannot convey to the creditor his right to "use and occupy" it exempt from sale.     The reason the Constitution gives the right to convey the homestead lot is not far to seek.     In many States it had been held that an allotted homestead was inalienable.     This clause was put in to prevent tying up land in that mode in this State.

Upon reason, and the above authorities, the homestead right is a privilege of exempting $1,000 from sale. It is personal and cannot be alienated, but it may be waived as to any particular lot by ceasing to be a resident of the State, or by ceasing to own and occupy the lot.

It has been waived or lost as to this lot by the mortgage and sale under it, and the homesteader cannot give to his mortgagee a right to the use of the proceeds when he has himself lost the right to "use and occupy" the lot.