T. J. GARDNER *v.* E. B. BATTS et al.

*Homestead, assignability of— Vendee Stands in Place of Homesteader.*

1. The homestead right or estate is salable or assignable, and the purchaser can hold the land to which it pertains to the exclusion of judgment creditors during its existence.

2. A judgment debtor, being the owner at the time of the docketing of a judgment against him of White Acre, sold and conveyed it to another and received, in part payment, a conveyance of Black Acre; upon the issuance of execution he selected Black Acre, which was worth less than $1,000, and insisted upon his right to have the deficiency made up out of White Acre: *Held*, that he had the right to select his homestead in any land which he owned at the date of docketing the judgment and the deficiency, after the allotment of Black Acre, should be made up to him out of White Acre.

3. In such latter case the fact that the homesteader was an unmarried man does not affect his right to the homestead:

CLARK, J., dissents, *arguendo*.

This was a CIVIL ACTION, heard on exceptions to the allotment of homestead to J. R. and E. B. Batts, before *Hoke, J.*, at November Term, 1893, of WILSON Superior Court, upon agreed facts, as follows:

"1. An execution was issued from Wilson Superior Court July 31, 1893, returnable on the eighth Monday after the first Monday in September, 1893, on a certain judgment rendered in said Court in favor of T. J. Gardner, plaintiff, against J. R. Batts and E. B. Batts, docketed February 17, 1887. The amount due thereon was $2,165, with interest at eight per cent. from November 15, 1887, and costs, sixty cents. The said execution was issued to the use of Doane Herring, the present owner of said judgment.

"2. Under said execution J. W. Crowell, Sheriff of Wil-

son county, on July 31, 1893, summoned appraisers, who allotted to J. R. Batts as his homestead exemption two tracts of land, as follows:

" (a). One tract in Toisnot Township, known as the Mercer tract, adjoining the land of W. D. Mercer's heirs and others, containing 36½ acres, more or less, valued by the appraisers at $180.

" (b). One other tract in said township, adjoining the lands of Julia Braswell, Thomas Williams and others, known as the Luper tract, containing 70 acres, more or less, valued by the appraisers at $210.

" 3. At the time of rendition and docketing of said judgment J. R. Batts was the owner in fee of the above two tracts of land allotted to him, and also one other tract known as the Draughn tract, situate in said county, adjoining the lands of Jesse Norris, W. D. Mercer and others, containing 184 acres, more or less.

" 4. On the 21st day of November, 1888, J. R. Batts and wife sold and conveyed to one J. L. Batts the said Draughn tract for the sum of $1,500, which was a fair price for the same. On this same date the Mercer tract was worth $508.66; the Luper tract was worth on this same date $650.

" 5. On the 9th day of January, 1889, J. L. Batts and wife sold and conveyed to Ella Batts, wife of the defendant J. R. Batts, the said Draughn tract for a good and valuable consideration.

" 6. At the time of the allotment of J. R. Batts' homestead he, in behalf of his wife and in his own behalf, demanded that the said Draughn tract of land be assigned as his homestead, but this the Sheriff and appraisers refused to do.

" 7. Under said execution the said Sheriff on the same date, to-wit, July 31, 1893, summoned appraisers, who, at

32

the said E. B. Batts' request, allotted to him, the said E. B. Batts, as his homestead exemption one tract of land in said county, adjoining the lands of J. Batts and others, known as the "Old Place," containing 130 acres, more or less, valued by said appraisers at $600.

"7a. The reports of the appraisers were filed in due form.

"8. At the time of the rendition and docketing of said judgment, and prior to the issuance of said execution, the said E. B. Batts acquired other lands than the tract allotted to him as aforesaid, which will fully appear in paragraphs following:

"9. On the 20th day of December, 1887, E. B. Batts, in consideration of the above described 130-acre tract and $500, sold and conveyed to J. L. Batts the tract of land situated in Toisnot Township, Wilson county, adjoining the lands of Isaac Page and others, containing 152 acres; the consideration cited was $2,000, which was a fair price for the same.

"10. On the date of the conveyance, as set out in paragraph 9, E. B. Batts was the owner in fee of a 666-acre tract situated in said county and township, worth $4,050, on which there was a mortgage for $3,050. This was the home place of the said E. B. Batts.

"11. In the summer of 1893 the 666-acre tract was sold under the mortgage for the sum secured thereunder, $3,050, with three years' interest at eight per cent.

"12. E. B. Batts is, and was on the dates above named, an unmarried man.

"13. The said E. B. Batts, on August 4, 1893, served a written notice on the Sheriff of Wilson county, demanding that the balance of his homestead exemption be allotted to him out of the 152-acre tract sold to J. L. Batts, to which plaintiff objected.

"14. J. L. Batts came in, making himself a party to this action, so far as it is proper and necessary to do so to protect his right in respect to the homestead right, if any, acquired by him as a purchaser of the land from E. B. Batts as hereinbefore set forth, and demands that the allotment of said homestead be set aside and that the said homestead be assigned and allotted to the said E. B. Batts, or to him, the said J. L. Batts, as grantee of the said E. B. Batts, in the manner above set forth."

Upon the facts agreed his Honor rendered judgment as follows:

"1. That the exceptions of John R. Batts and wife to the allotment of the homestead be and they are hereby sustained; and it is further adjudged the Sheriff of Wilson county proceed to allot to the said John R. Batts his homestead in the lands owned by the said John R. Batts at the time of the rendition of the judgment herein, and afterwards conveyed to him by J. L. Batts and by him conveyed to the said Ella Batts, being the tract adjoining the lands of Jesse Norris and others, containing 184 acres, and known as the "Draughn Tract," at such valuation as the jury may place thereon, and if the said tract be not sufficient to give the said J. R. Batts his homestead that the deficiency be made up of such other lands as the said J. R. Batts may select.

"2. That the homestead assigned to the defendant E. B. Batts in the 130-acre tract, valued at $600, be and the same is confirmed; that there be allotted to the said E. B. Batts in the lands sold by him to J. L. Batts, containing 152 acres, adjoining the lands of Isaac Page and others, the deficiency, to-wit, $400, from such part thereof as the said J. L. and E. B. Batts may select."

The defendants excepted to and appealed from so much of the foregoing judgment as directed the allotment of a

homestead to J. R. Batts out of the lands now owned by
his wife and of the allotment of the deficiency of the
homestead of E. B. Batts out of the land conveyed by him
to J. L. Batts.

To so much of said judgment as confirms the allotment
of the homestead of E. B. Batts in the 130-acre tract the
defendant J. L. Batts excepted and appealed.

*Messrs. Aycock & Daniels* and *J. F. Bruton*, for plaintiff.
No counsel *contra*.

MACRAE, J.: These cases in no material respect differ
from *Adrian* v. *Shaw*, 82 N. C., 474, and 84 N. C., 832.
The principle there announced, not the first time, for it is
the same in *Littlejohn* v. *Egerton*, 77 N. C., 379, is: "The
Constitution vests the homestead right in the resident owner
of land and authorizes him to convey it. The vendee
must take it with the same quality annexed that had
attached to it in the possession of the vendor; that is, to be
exempt from execution for the debts of the vendor, at least
during his life."

Fitting this principle to the case then before the Court,
it was held that where Jackson, a resident of this State,
was the owner of only one tract of land, and that worth
less than one thousand dollars, and a judgment was dock-
eted against him, and he afterwards, and before execution
issued against him or a homestead was laid off to him, sold
and conveyed said land, his wife joining in the deed with
all the formalities prescribed in the Constitution for the
conveyance of a homestead, the purchaser acquired a good
and indefeasible title for the life at least of Jackson, against
the creditors of Jackson, notwithstanding he may have
*since* removed from the State.

It was there said by Mr. Justice ASHE: "The law, when

it authorizes one to sell his homestead, would be untrue to itself and the obligations of justice if it were to allow the owner to sell it, receive a full and fair price, and then leave it subject in the hands of his vendee to the satisfaction of his debts."

While there has been much criticism of the definitions of homestead given in this and other cases, which are collected in *Vanstory* v. *Thornton*, 112 N. C., 196, *this* principle has always been recognized and followed in our decisions with the exception of the case of *Fleming* v. *Graham*, 110 N. C., 374, where a different principle was announced (although it was unnecessary so to hold in order to reach the conclusion concurred in in that case that there was no error), "that a valid conveyance of land before the allotment of a homestead is a waiver of the right of homestead as to the land thereby conveyed, and the vendee takes it subject to the lien of any judgment docketed prior thereto, but the vendor may subsequently have a homestead allotted to him in other land."

But upon a very serious consideration the Court in *Vanstory* v. *Thornton, supra*, recalled these expressions and stated the law to be as it had often been declared, that the homestead, by whatever definition it may be characterized, is salable or assignable, and the purchaser can hold the land to which it pertains to the exclusion of judgment creditors during its existence. By virtue of the assignment "he gets into the shoes of the homesteader." "He has bought the privilege of so standing, the privilege of personating, before the law and the judgment creditor, the homesteader himself *quoad* the homestead land." The matter was fully discussed in this case, the views of a majority of the Court being presented in the opinion of Mr. Justice BURWELL and the contrary view by Mr. Justice CLARK in a dissenting opinion. It will be unnecessary, therefore, to

review the numerous decisions of this Court to show that whatever differences may have arisen upon the application of principles to ever varying phases, as they have from time to time been presented on this point, there has been "no variableness, neither shadow of turning," except in the one case last named, which this Court, for the sake of stability of decision and preservation of rights acquired thereunder, hastened to recall.

Confining ourselves strictly to the questions before us and applying recognized principles to them: J. R. Batts had a vested right to a homestead of his own selection, the quantity to be laid off according to law in the lands owned by him at the time of the docketing of the judgment. A conveyance by him and his wife under the formalities prescribed by law of those lands or any part thereof was a conveyance of such interest as he had therein. It did not release said lands from their exemption from sale under execution at the instance of his judgment creditors. And upon the issuing of execution against his property he had the right to select such portion of said land as he chose to be laid off to him by the appraisers, not exceeding $1,000 in value. The fact that such exemption enured to the benefit of the purchaser from him cannot affect or injure the rights of the judgment creditors. If he had made no conveyance at all, or if he had attempted to make a fraudulent one, his homestead right would not have been impaired, nor would the rights of his judgment creditors have been changed. He might with the concurrence of his wife convey his homestead right before the homestead had been laid off to him, as in *Adrian* v. *Shaw*, and his grantee would be entitled to precisely the same rights as the homesteader himself possessed. It might not be a difficult task to show that some at least of the alleged discrepancies in decisions upon this subject are more seeming than real and

arise more because of the language used in the application
of principles to particular cases than in the change of the
principle itself as announced by the eminent members of
this Court in the early construction of the Constitution and
laws in their application to the homestead exemption.

We are persuaded that whether the conclusions reached
have been entirely satisfactory to all they are at least well
understood, and that it will be infinitely better to adhere
to them strictly than to unsettle the law by an endeavor
to change that which is now settled into a system under
which counselors may advise and rights of property may
be acquired and preserved with reasonable certainty.

The case of E. B. Batts stands upon the same footing and
is governed by the same principle. Leaving out of view
the mortgaged land which was sold under the mortgage,
when the judgment was docketed against him he had a
tract of 152 acres, which he sold to J. S. Batts and received
in part payment therefor another tract of 130 acres. This
latter tract was laid off to him at $600. He demands
that the deficiency be made up out of the 152 acres sold
by him to J. L. Batts. While this latter tract was owned by
the judgment debtor, E. B. Batts, when the judgment was
docketed against him, it was not a necessity that the whole
exemption should attach to it, for no homestead had yet
been laid off. By section 2 of Article X of the Constitu-
tion the owner is entitled to select the land to be exempted
for him as a homestead. By virtue of section 435 of *The
Code* the docketing of a judgment against him constituted
a lien on his real property in that county which he had
at the time of the docketing, or which he might aquire at
any time within ten years thereafter. The Constitution as
above referred to secured him the homestead exemption in
such part of this land as he might select; there was noth-
ing, as far as we are informed, in his contract with J. L.

Batts which bound him to select first the 152-acre tract for the exemption. He seems to have exercised his constitutional right. As the 130-acre tract was appraised at only $600 he is entitled to have a sufficient quantity of the 152-acre tract laid off to him to make up the deficiency, and this part by virtue of the conveyance to J. L. Batts enures to his benefit. The fact that the homesteader is an unmarried man does not affect his rights.                    Affirmed.

CLARK, J., dissenting: It was held by a unanimous Court in *Fleming* v. *Graham*, 110 N. C., 374, following the intimation in *Jones* v. *Britton*, 102 N. C. (on p. 180), that the homestead was a mere "stay of execution, nothing more, nothing less," and that being an exemption personal to the "owner and occupier" it ceased as to any particular homestead whenever conveyed away by the owner. In *Vanstory* v. *Thornton*, 112 N. C. (p. 207), the Court "recalled" the decision in *Fleming* v. *Graham* and reverted to the ruling in the older case of *Adrian* v. *Shaw*, 84 N. C., 832, which had held that the homestead right was an estate or invisible interest in the lot itself which passed by a conveyance to the purchaser of the land and protected it in his hands. Without adverting to the very full discussion of the subject in *Vanstory* v. *Thornton*, it does not seem to me that either that case or *Adrian* v. *Shaw* sustains the view taken in the present case, which goes far beyond them. Those cases, indeed, held that the homesteader could pass the homestead lot to another who could have the homestead right of the grantor vicariously imputed to himself after it had ceased to be the homestead of the grantor by his conveying it away in the manner prescribed by the Constitution.

In the present case the grantor had taken no homestead. He had conveyed the land away without having it allotted.

Some time after it ceased to be his property, and when he could no longer assert any dominion over it and had no right to even put his foot upon it, he is allowed to have it laid off to him as his homestead. The sole authority upon which it can be claimed that he can do this is the following clause in the Constitution: "Every homestead * * * to be selected by the owner thereof * * * owned and occupied by any resident of this State * * * shall be exempt from sale under execution." Was the defendant Batts the "owner" of the land set apart to him? No. Did he occupy it? No. Was it selected by the "owner"? Not at all. By his solemn deed he had long before ceased to be the owner. By his own act he had long ceased to "occupy" it. I cannot see that either by the letter or the spirit of the law he has any claim to have it set apart. Clearly this does not come within the terms of the constitutional provision. Nor does it come even within its spirit, which was to keep over a debtor's head a roof which he needs and not merely to keep his creditors from subjecting to the payment of his debt property which the debtor both by his act and deed has shown to be no longer necessary to provide him a shelter and a home.