AARON LADD v. L. C. BYRD et al.

*Action for Possession of Land—Homestead—Sale of Reversion—Right of Possession—Adverse Possession—Statute of Limitations—Burden of Proof.*

1. The possession by a homesteader, or one claiming under him, of land which has been sold or held subject to the homestead right, does not become adverse so as to start the running of the statute of limitations until the purchaser's right of action and entry accrues on the termination of the exemption.

2. An action for the possession of land is conclusive as to title only where an issue involving title is raised and passed on by the jury; therefore,

3. Where land was sold in 1868 under a judgment on an old debt, no homestead being previously allotted, and in an action for possession by the purchaser it was decided that the debtor was entitled to a homestead in the land, which he had had allotted to him after said sale, and which he occupied until he died: *Held*, (1) that the purchaser was precluded by such adjudication from demanding possession until the falling in of the exemption, and hence the statute of limitations did not begin to run against him until then; (2) that the debtor and those claiming under him were estopped from denying, as against the creditor and those claiming under him, that they occupied the land in dispute as a homestead, and not in their assertion of a title adverse to the creditor, so long as the homstead right subsisted.

4. Where, in an action to recover possession of land, a homestead right is shown to have existed, the burden is on the plaintiff to show that it has terminated, not only by the death of the homesteader but also by the arrival at full age of his youngest child.

Action to recover land, tried at Spring Term, 1893, of WILKES Superior Court, before *Boykin, J.*

The plaintiff introduced a certified copy of a judgment of the Supreme Court of North Carolina, rendered at June Term, 1868, in favor of one Amos Ladd against Jesse P. Adams and others, on a debt contracted before 1860, and an execution

in the usual form issued thereon, tested January Term, 1868, and returnable to January Term, 1869, of said Court, under which the land in controversy was levied on on August 2, 1868, and sold on the 2d of January, 1869, by the Sheriff of Wilkes, as the property of the said Jesse P. Adams; and the plaintiff then introduced the Sheriff's deed to him, dated February 13, 1869, and registeréd April 19, 1869, reciting the levy and sale under the execution, and fully describing the land—the deed being in usual form. It was admitted that the levy, sale and Sheriff's deed covered the land in controversy. The summons in this case was issued February 7, 1890.

The defendant contended that the plaintiff's right of action was barred by the lapse of time, and introduced the following testimony:

H. C. Doughit testified: "That Jesse Adams lived on the land in controversy in 1869, after the suit had been brought. Ladd went to Adams to demand the land. I was with him. He said to Adams that he demanded possession of the land. Adams said, ' I'll not talk to you this morning,' and went back into his house. Ladd said his counsel had advised him to demand possession. His wife and daughter were then living with Adams. Adams lived on the land until his death. His son-in-law Holdman has lived there since, a part of the time. Ladd has never been in possession, only Adams and his heirs."

W. S. Holdman, witness for the defendant, testified: " I married Jesse Adams's daughter Martha. Have known Adams for thirty years. He lived all this time on the land, and died there in October, 1889. Since he died, my wife and I have been in possession, getting the rents and profits. Plaintiff has not been in possession at all."

The defendants then introduced the summons and complaint in the case of Aaron Ladd against Jesse P. Adams, brought to Spring Term, 1869, summons dated March 30,

1869, being an action for the recovery of the land in controversy.

The plaintiff then, for the purpose of explaining the possession, or rebutting the adverse possession, introduced the answer and case agreed and judgment of the Supreme Court to show that defendants have claimed and held the land as a homestead, and the same had been allotted.

It was admitted that judgment of nonsuit was rendered at Spring Term, 1871, in the case of Ladd v. Adams, in accordance with the ruling of the Court upon the case agreed, and this ruling affirmed at January Term, 1872, on appeal to the Supreme Court.

The plaintiff asked the Court to instruct the jury that if Jesse P. Adams lived upon the land, and held the same as his homestead, and the plaintiff acquired by reason of the ruling of the Court in the case of Ladd v. Adams, and the prevailing opinion that Adams was entitled to his homestead in the land, as against this plaintiff, it would not be such an adverse holding as would bar plaintiff's action.

His Honor declined to give this instruction, and told the jury that, if they believed the testimony, the plaintiff was not entitled to recover.

There was no evidence as to whether the widow of Jesse Adams was dead, or as to whether the children of said Adams are yet minors.

In deference to this ruling the plaintiff excepted to the refusal of the Court to give the instructions asked, and to that given, and submitted to a nonsuit and appealed.

*Messrs. A. E. Holton* and *Watson & Buxton*, for plaintiff (appellant).

No counsel, *contra*.

AVERY, J.: Prior to the passage of the Act of 1870, when the reversionary interest could still be sold under execution,

the judgment creditor might, at his option, recognize the claim of the debtor to a homestead by exposing to sale only such reversionary interest without affecting the validity of the sale or in any way impairing the right of the purchaser to the possession of the land on the expiration of the prescribed period of exemption. *Long* v. *Walker*, 105 N. C., 91; *Wyche* v. *Wyche*, 85 N. C., 96; *Barrett* v. *Richardson*, 76 N. C., 423. When made expressly "subject to the homestead," it was held that the sale was valid and "passed the reversionary interest only." In such cases it is clear that those holding under and enjoying the right of exemption, and their assignees, are in privity with a purchaser whose right to possession is postponed by the clemency of the execution creditor, and their possession in no event becomes adverse to his claim till his right of entry and of action accrues on the termination of the exemption. *Corpening* v. *Kincaid*, 82 N. C., 202; *Lowdermilk* v. *Corpening*, 92 N. C., 333. The same principle prevails as that which governs in the case of life-tenants and remaindermen or reversioners. The statute does not run until the new claimant can maintain an action for the possession and fails to bring it. *Melvin* v. *Waddell*, 75 N. C., 361; *Staton* v. *Mullis*, 92 N. C., 623; *Avent* v. *Arrington*, 105 N. C., 377.

But in the case at bar it seems that the present plaintiff, Ladd, recovered a judgment against one Adams on an old debt, and at a sale under execution thereon, on the 2d day of August, 1868, made without allotting a homestead to the debtor, became the purchaser and took the plaintiff's deed for the land. When, however, the plaintiff attempted to enforce his right by an action for possession, it was decided that Adams, the debtor under whom the present defendants claim as heirs at law, was entitled to a homestead in the land (*Ladd* v. *Adams*, 66 N. C., 164), and the plaintiff was forced to submit to judgment of nonsuit, in accordance with the view which then received the sanction of this Court; that the

homestead provisions of the Constitution operated retroactively. Notwithstanding the fact that the decision of the Supreme Court of the United States subsequently rendered led to the overruling of that doctrine, Adams, having had his homestead previously allotted so as to embrace the whole tract of land in controversy, continued to occupy it till his death, in 1889, and since his death the defendants have held possession, claiming as heirs at law of Adams.

We think that the judgment in the former action is conclusive upon both parties to the extent only that the plaintiff (having failed to raise the Federal question by appeal to the Supreme Court of the United States) was precluded from demanding the possession till the falling in of the exemption, while the defendant and those claiming under him were estopped from denying as against the plaintiff and those claiming under him that they occupied the land in dispute as a homestead and not in the assertion of a title adverse to that of the plaintiff, so long as the homestead right subsisted. The creditor, though he acquired a good title under the sale, has recognized by his inaction the validity of the allotment of the homestead, and is in no worse plight than if he had not proceeded to sell until Adams died, in 1889. If the sale had not been made until that time a good title would have passed, as has been expressly held by this Court. *Cobb* v. *Halyburton*, 92 N. C., 652. It would therefore be strangely inconsistent with the doctrine laid down in the cases cited, that the creditor who sold subject to the homestead, when not bound to do so, or who calmly awaited, without action, the termination of the exemption and thereby recognized its validity, was not barred when the right expired, should we hold that another creditor who did not sleep upon his rights, but was compelled to acquiesce in the ruling of the highest Court of the State, is either concluded by the adjudication that the defendant was entitled to his homestead or is barred by the lapse of time during the occupancy under the claim

of exemption. The judgment of nonsuit was affirmed solely upon the ground that the homestead was valid—not because the reversionary interest could not be subjected for the debt. The sale was valid, and unquestionably a good title passed to plaintiff by virtue of the Sheriff's deed. *Long* v. *Walker, supra.* Actions for possession are conclusive as to title only where an issue involving the title is raised and passed upon by the jury. *Allen* v. *Sallinger,* 103 N. C., 14. Therefore the judgment in the former proceeding binds both parties as to the validity of the allotment of the homestead to Adams, and no further. *Cobb* v. *Halyburton, supra.* Although the ruling of this Court in *Ladd* v. *Adams, supra,* is admitted now to have been erroneous, those who claim under and in privity with Adams will not be heard, after his enjoyment of the benefits of the exemption to which the Court declared him entitled up to the time of his death, to claim all of the advantages of an adverse holding during an occupancy which was protected by the Courts as lawful only upon the idea that it was not adverse to the claims of creditors. But it did not appear as a fact whether the homesteader Adams left surviving him any minor children or whether he left a widow. The action for possession cannot be maintained while one of the children of Adams is still a minor. *Cobb* v. *Halyburton, supra.* The homestead right having been shown to exist is presumed to continue, and the burden was upon the plaintiff to show that it had terminated. The burden is always upon the remainderman, whose estate is expectant upon the determination of a life-estate, to show that his right of action had accrued by the termination of the particular estate, when suit was brought. *Lewis* v. *Mobley,* 4 Dev. & Bat., 323. The plaintiff must show title good against the world, and after it appeared that Adams was entitled to homestead and had it allotted to him, and the plaintiff acquiesced in the adjudication in his favor, and it appeared that there were children of Adams surviving him, it became thereupon incumbent upon the

plaintiff to prove that the exemption had terminated, or the
attainment of the age of twenty-one by the youngest of such
children.   Holdman, a witness, married Martha, a daughter
of Jesse Adams (we know not when), but since the death of
Adams the homesteader, in 1889, said Holdman and his wife
have been in possession.   Another witness had testified that
in 1889 Adams and his wife and daughter were living with
him on the land.   It does not appear whether her name was
Martha, or whether she was a daughter by the same or a dif-
ferent marriage.   There is no testimony tending to show her
to be the same person as Martha, who married Holdman and
first appears upon the scene as an occupant of the land since
1889.   If it had appeared that Martha was the only surviv-
ing child at the death of Adams, we could not, even then,
have jumped to the conclusion that she was the same daughter
who was with her mother in 1869, nor could we conclude,
because she was married in 1889, that she had necessarily
attained her majority (on the 7th of February, 1890), when
this action was brought.   The general rule is that a party
whose right depends upon the death of another must either
show, by direct proof, that such person is dead, or raise the
presumption that he is dead by proving that he had not been
heard of in seven years.   1 Greenleaf Ev. § 41.   We think,
in the same way, that as the burden is on a plaintiff who
sues, as remainderman, to offer evidence that will at least
raise a presumption of the death of the life-tenant, so one
who sues for the reversionary interest in a homestead must,
when it appears that the homesteader has a child or children,
offer testimony, not only to prove that the homesteader is
dead, but that the exemption has terminated by reason of
the age of the child.   Besides the evidence in relation to
Martha, the Judge who tried the case below, seemed to rest his
ruling, in part, upon the ground that "there was no evidence
whether the *children* of the said Adams are yet minors."
From this statement we might reasonably infer that there

was evidence of the existence of other children besides Martha, though the testimony as to her was sufficient to shift the burden of proof to the plaintiff. We see no force in the suggestion of inconvenience likely to arise as to families moving out of the State, when we recollect that any person not heard of for seven years is presumed to be dead. There can be no great hardship in holding a plaintiff to the duty of complying with that rule. While, therefore, the Court erred, if we are to understand his Honor as holding that the possession of the defendants was adverse to the plaintiff, it was not error to instruct the jury that the plaintiff could not recover because the action appeared to have been prematurely brought.

The judgment is          Affirmed.