\*STERN & BROS. v. S. F. LEE, Administrator of D. M. LEE, et al.

*Homestead Exemption—Rights of Remainderman—Conveyance by Homesteader, Effect of.*

1. The docketing of judgments against a debtor who holds land in remainder, dependent upon life estate in another, creates a lien upon such estate, which, not being susceptible of immediate occupancy, is not protected from sale under execution by the Constitution and laws relating to homestead exemptions.

2. But where, in such case, the judgment creditors do not exercise their right to sell their debtor's estate in remainder, and, by a determination of the particular estate, his right to a homestead accrues, and he thereupon conveys the land to another in fee (the land being all that he owns and worth less than $1,000), the enforcement of the judgment is postponed, not only until the death of the debtor, but until the arrival at full age of his youngest child.

---

\*CLARK and MacRAE, JJ., dissent.

STERN *v.* LEE.

·CIVIL ACTION, heard at Fall Term, 1893, of CHOWAN Superior Court, before *Graves, J.*

The facts appearing from the complaint are as follows:

"By deed, dated July 1, 1879, certain land in Chowan County was conveyed to D. M. Lee in fee, reserving a life estate to *feme* grantor S. F. Bond, to be terminated on her second marriage. In 1883 and 1884 judgments were regularly docketed in Chowan Superior Court in favor of defendants Fieldman and Perkins, and the plaintiffs in the order named. Nothing has ever been paid on either of them. When docketed Lee had a living wife (Sallie) and children, two of whom are about sixteen and eighteen years of age. Sallie died, and in 1888 Lee married said S. F. Bond. In 1892 Lee died, leaving small children by her. She qualified as his administratrix. Lee left no personalty to be applied to said judgments. At time said deed was made, Lee owned no other land, nor did he own other thereafter. ·Said land was then, and has been ever since, worth less than $1,000. No homestead has ever been allotted to Lee. After his second marriage, Lee and wife Sarah F. conveyed said land in fee to defendant White, who conveyed same to defendant Parker, and he mortgaged same to White to secure purchase-money. Defendants Parker and wife are now in possession of the land.

Defendants Parker and White demurred on the grounds, in substance: "(1) That Parker has the right to occupy the land exempt from sale until Lee's youngest living child is twenty-one, and (2) that plaintiffs' remedy, if they have a right to sale of the land, is by issuing execution, and not by an independent action, and because they claim complaint does not show that the judgments are still liens on said land."

Plaintiffs contend that they are entitled to an immediate sale of the land to satisfy their own after paying the prior judgments of Fieldman and Perkins, or that, if not entitled to an immediate sale, they have a right to a judgment declar-

ing the judgment liens on the land, and fixing the time when exemption from sale will cease, as being either when living children by first marriage are all twenty-one, or at farthest, when there is no living child by either marriage under age.

His Honor sustained the demurrer, and the plaintiffs appealed.

*Mr. W. M. Bond,* for plaintiffs (appellants).
*Mr. W. D. Pruden,* for defendants.

BURWELL, J.: "Land held in remainder dependent upon a life estate in another is not susceptible of that immediate occupancy which is contemplated by law in order to constitute a homestead." *Murchison* v. *Plyler,* 87 N. C., 79. Hence, while the estate of the judgment debtor Lee in the land mentioned in the pleadings was only an estate in remainder after the life estate of Mrs. Sarah Frances Bond, his interest in the land was subject to sale under execution. The docketing of plaintiffs' judgments, under the provisions of our statutes, gave them a lien on the estate of their debtor in this land, and the Constitution and the laws, as interpreted by this Court in the case cited above, did not protect that estate from sale though it was all the realty owned by the debtor and was worth less than one thousand dollars.

But the plaintiffs did not see fit to exercise this right to sell their debtor's estate in remainder, and, by a determination of the particular estate, his right to the land has become such as clearly to entitle him to claim homestead privileges and immunities therein. Plaintiffs' liens are not at all displaced or affected by the change of the debtor's title. Their enforcement is postponed, however, because *in lieu of that estate in remainder,* which was not protected from sale, there has come to the debtor an estate which, by force of the provisions of the Constitution, brought to him a " homestead " in this land.

Being thus entitled to " a homestead " in all the land (it being worth less than one thousand dollars and all that he owned) he conveyed it to another in fee.   He could not by that act deprive the plaintiffs of any of their rights, or change or in any degree affect them.   The limit of the effect of that deed is the line which marks the beginning of plaintiffs' rights under the law.   The plaintiffs have liens on the land by virtue of their docketed judgments; the debtor's deed cannot annul or change those liens.   The plaintiffs have a right to enforce their liens at the time and in the manner prescribed by law; the debtor's deed cannot for an instant postpone that enforcement.   The effect given to the properly executed deed of the " homesteader " and his wife conveying the homestead land, by the decisions of this Court, does not at all interfere with or affect the rights of judgment creditors.   By the law they are given a lien.   Their lien continues in force, notwithstanding the debtor's conveyance, unimpaired.   By the law the enforcement of their liens by sale is postponed until the determination of the " homestead " right.   That postponement is not extended by the debtor's conveyance of the land.

It seems clear, therefore, that the judgment creditors of " homesteaders " have no good cause to complain of the effect allowed to the homesteader's deed, as fixed by the case of *Adrian* v. *Shaw*, 82 N. C., 474, and the long line of cases of like import.   They are left in exactly the plight they were in when the deed was made.   On the contrary, the " homesteader " would have, we think, good cause of complaint if it was held that a conveyance by him subjected the land to immediate sale under executions issued on docketed judgments.   For, in that event, as is most forcibly pointed out in *Simpson* v. *Houston*, 97 N. C., 344, the homestead would be in effect unalienable, and, being unalienable, the homestead would become under some circumstances a prison rather than a home.   Thompson on Homestead and Ex., sec. 399.

In many States where homesteads are secured by law to residents, and where docketed judgments are liens on the judgment debtor's land, an exception as to such liens is made as to homestead lands. On the homestead lands, while occupied as such, no lien attaches; and the homesteader, though he is also a judgment debtor, can make a good title to the homestead land. His conveyance, if made while holding the homestead, is good against the docketed judgments.

In this State it is settled, *nemine dissentiente,* that a docketed judgment creates a lien on the homestead land. That being fixed, the Courts here were driven to the conclusion either that the " homestead " was, in effect, not alienable, or that the rule announced in *Adrian* v. *Shaw, supra,* was the law of this commonwealth. Under that rule, those who acquired by proper deed the " homesteader's" title to the land, have the right to assert every right to the land that is not inconsistent with or injurious to the rights of the lienors, the judgment creditors.

What the rights of the homesteaders' vendees are will be disclosed by an ascertainment of the rights of the plaintiff judgment creditors. The rights of the latter are paramount, and should not be encroached upon. What are they? To have the homestead land sold to satisfy their debts just as soon as the " quality of exemption from sale under execution," as it has been called, passes from the land; just as soon as the land could have been sold to satisfy the judgments, had no conveyance been made, and no sooner. When does that quality of exemption from sale under execution cease? It seems to be conceded by plaintiffs' counsel that that quality, according to the decisions of this Court, followed the land in the hands of the purchaser from the homesteader, and continued till his death. But it is insisted that it ceased at his demise. We do not accede to that proposition. The Constitution, Article X, section 3, expressly provides that " The homestead, after the death of the owner thereof, shall be

exempt from the payment of any debt during the minority
of his children or any one of them." The duration of this
quality of exemption from sale under execution is thus
plainly extended beyond the life of the homesteader. Had
he not sold the homestead land, the plaintiffs could not have
sold it to satisfy their judgments until all his children had
arrived at full age. We do not subtract anything from
their rights when we decide (as we think the former decis-
ions of this Court, running through a long series of years
and establishing a rule under which many have acquired
rights to property, require us to do), that the purchasers of
the homestead land from the homesteader and his wife
acquired the right to hold the land against judgment cred-
itors, not only for the life of the homesteader, but also
" during the minority of his children or any one of them."
In a very recent case (*Ladd* v. *Byrd,* 113 N. C., 466), it was
decided that where, in an action to recover possession of land,
a homestead right is shown to have existed, the burden is
on the plaintiff (claiming to own the " reversion " after the
expiration of that right) to show not only the death of the
homesteader, but also the arrival at full age of his youngest
child. That case seems decisive of this one.

In *Rogers* v. *Kimsey,* 101 N. C., 559, there was a contest,
as there is here, between judgment creditors and the vendee
of the deceased judgment debtor. One question in that ap-
peal was : When did the homestead right terminate so as to
allow the creditor to have a sale of the aliened land ? Chief
Justice SMITH there said that " the right to such homestead
terminates at his death without wife or infant children, and
hence if a lien has been acquired it may now be enforced."
This language clearly implies that if he had left infant chil-
dren it would not have terminated at his death, and so that
case is also decisive of this one.

In *Fleming* v. *Graham,* 110 N. C., 374, the Justice who de-
livered the opinion, combatting the rule established by

*Adrian* v. *Shaw, supra,* uses this language : " If this were law, upon the termination of the homestead right by the death of such debtor, *and the arrival of his youngest child of age,* numerous one thousand dollar tracts of land would be for sale, which he had kept *till then* exempt from his creditors." The words we have italicised in the above quotation seem to indicate an opinion that the homestead right did not terminate till the youngest child of the " homesteader " became of age. No Error.

MacRae, J. (dissenting) : I do not think that any question of homestead arises upon this appeal. In September, 1883, the first judgment was taken and docketed against D. M. Lee, and in May, 1884, the other two judgments were docketed against him, and from the docketing of these judgments the lien attached upon his estate in remainder. *The Code,* § 435 ; *Mannix* v. *Ihrie,* 76 N. C., 299.

It is perfectly clear that during the widowhood of Sarah F. Bond, the remainderman D. M. Lee had no estate in the land which could be set off by metes and bounds, or that was susceptible of present occupancy. It has been so expressly held in *Murchison.* v. *Plyler,* 87 N. C., 79, where, under the same circumstances, the tenant in remainder, without the joinder of his wife, mortgaged the land ; the Court held that not being subject to a homestead in favor of Murchison, the joining of his wife was unnecessary, that his power to convey was without limit. "And if he should exert this power, either absolutely or conditionally, by a sale of his estate and interest in the land while thus untouched by the right of exemption, it can never again be made subject to that right by anything that may thereafter occur."

When D. M. Lee, in 1888, married Sarah F. Bond, the particular estate determined, and he became owner in fee of the land, and upon his interest the lien of the docketed judgments had already attached when there was no right of

homestead exemption.   This lien could not be divested by the falling in of the particular estate   It is like the case of *McKethan* v. *Terry*, 64 N. C., 25, where the lien having been acquired in 1867 by a levy, it was held to be a vested right which could not be divested by the homestead provision of the Constitution.   If there was no homestead exemption, the lien of the docketed judgment was lost at the expiration of ten years.   So the first judgment lost its lien in September, 1893, and the others in May, 1894, and the plaintiff is not entitled to the relief demanded.   *Whitehead* v. *Latham*, 83 N. C., 232.

CLARK, J. (dissenting): The homestead is prescribed and its limits defined by the Constitution.   The Legislature has no power to increase it.   *Wharton* v. *Taylor*, 88 N. C., 230. Of course neither can the Courts enlarge it.   In construing its limitations we must look to the plain, unvarnished language of the Constitution, and not back of it to some supposed public policy which caused the adoption of this constitutional provision, as to which minds may easily differ.

Looking at the Constitution itself, it is clear that the homesteader was given a life exemption—no more.   There is no indication whatever that he should have the power to exempt any part of his property from liability for his debts longer than his life.   Another clause gives his children the right to claim the exemption for themselves during minority—and this it has been held they may do, whether the homesteader has had the homestead laid off or not.   And still another clause provides that when there are no children, the widow may likewise have it laid off during her widowhood, if she have no homestead in her own right.   The only limitation upon this right of the widow and minor children is that it must be as to a homestead of which the father and husband is the " owner " when he dies.   As to the homesteader himself, his right in the homestead dies with him.   He has no

115—28

interest therein which he can transmit to another by devise to the detriment either of his creditors, his children, or his widow. Whatever right he had to protect the land from sale by virtue of the homestead dies with him, if he remains in possession of it till his death, and he cannot extend it by conveying the land to another, neither by deed nor by devising it in his will.

The Constitution, Art. X, sec. 3, provides that "the homestead, after the death of the *owner* thereof, shall be *exempt* during the minority of his children, or any one of them." Was the debtor here the "owner of the homestead" at his death ? If so, his minor children would have the benefit of a shelter for their heads till the youngest became of age. They, and they alone, after the death of the homesteader, have the right to longer postpone the enforcement of the just claims of his creditors, except in the case in which the widow can make the claim. This is a wise and beneficent provision, intended to shelter the helpless. But if the homesteader has conveyed away the homestead right to other parties by conveying away the homestead lot, where is the protection of the roof tree for the children ? What object could the Constitution have in protecting from his creditors these purchasers from the life tenant and leaving the minor children upon the cold charities of a heartless world ?

Now, I understand the majority of this Court to be of the opinion that if the homesteader convey the homestead, he cannot take a second, or a third, or a fourth, or a tenth homestead. This would seem clearly so in the face of the constitutional provision for a homestead "not exceeding in value one thousand dollars." Otherwise, during the homesteader's life, there might be several homesteads outstanding in the hands of his grantees, each of one thousand dollars, exempt from liability for his debts. If the father, owning a homestead, die, not having had it laid off, the children can have it laid off under this provision of the Constitution. *Gregory*

v. *Ellis*, 86 N. C., 579. But if the homesteader has already conveyed a former homestead, and such conveyance protects it in hands of his grantee from judgment liens, even beyond his life, then either the children and the widow are deprived of the constitutional protection given *them* to the shelter of the homestead of which he dies in possession, or else the rights of the creditors are impaired by having two homesteads (or more) held against them, one by the children, or widow, and the other (or several others) by the grantees of the debtor, and this in the face of a Constitution which exempts only one homestead, and that " not exceeding one thousand dollars."

This confused state of things, it seems to me, is due solely to the fact that the homestead right and the homestead lot have not always been distinguished. The homestead right is personal and inalienable. It is the right to a shelter from the storms of life, to a roof tree. The homesteader can claim it as often and whenever he has the roof over his head. When he dies, his children, during their minority, can claim it as to the homestead their father owned when he died. As to the tract or lot of land over which, at any given moment, he claims the homestead exemption, the homesteader is empowered to convey that to prevent the tying up of realty. But to argue that with such conveyance there must also go the grantor's homestead right, because otherwise the liens of judgment creditors might take the land and the conveyance would be futile, is, at best, the argument *ab inconvenienti.* It should not avail to change an " exemption " personal to the " owner and occupier of a homestead," which the Constitution gives, into an " estate," or so-called " quality," which, invisible to mortal eyes, attaches to the lot and travels around with it into all the successive hands into which that lot of land may go. Besides, even this argument loses sight of the fact that when the homestead lot is conveyed, there are not always liens upon it, and if liens, not necessarily for the full

value of the homestead. And if the liens are for the full value, the homesteader need not convey. He can stand as he is. If he voluntarily, nevertheless, should see fit to abandon his shelter, the Constitution expressly authorizes him to do so as to the lot conveyed. But he has an inalienable and indefeasible power to assert his homestead right, not by proxy over the lot he has conveyed away, but in his own behalf, as to any other lot he may become the owner of, and his minor children and wife can assert it as to any homestead he may be the owner of at his death. It is true, in the late case of *Vanstory* v. *Thornton*, 112 N. C., 196, this Court (though not by a unanimous bench) departed from the then recent decision of *Fleming* v. *Graham*, 110 N. C., 374, and reverting to the older decision of *Adrian* v. *Shaw*, 82 N. C., 474, held that the conveyance of the homestead lot was not merely a conveyance of the land described, but also of an invisible " quality " attached to it by virtue of the grantor's homestead right. Taking it, for the argument's sake, that the latter case will be adhered to after the maturer thought which already, in so many instances (notably in *Long* v. *Walker*, 105 N. C., 90), has corrected the erroneous earlier rulings as to the homestead, still *Vanstory* v. *Thornton* does not go to the extent of holding that a person can convey an interest in land which he cannot devise, nor that the owner of a lifetime exemption, which expires as to him at his death, can prolong it after his death by conveying it to another. If anyone can claim the homestead right after his death, it is the minor child or widow, and not the grantee.

The extension of the homestead exemption given to the minor children may last twenty-one years. That in favor of the widow (when there are no children) may last fifty or sixty years. Such instances are not infrequent. The Constitutional Convention certainly never intended that a man could take, say, a dozen homesteads, all at one time, notwithstanding liens of docketed judgments, and protect all twelve

pieces of land from sale in the hands of grantees, nor that all twelve should be further protected after the debtor's death, perhaps for twenty-one years, if there are minor children, or fifty or sixty years when there is a widow, and during all that time the children and widow receive no benefit from such extension of the exemption. Such a result would be against the common sense of mankind. The Convention, instead of that, would have given him one homestead in fee, which they voted down, in preference to a multitude of such as this. Our predecessors, handling a new subject, made a mistake in *Adrian* v. *Shaw.* This Court has not hesitated to overrule nine other erroneous rulings as to the homestead. There is every reason to overrule this, which is the greatest mistake of them all, and which, if allowed to stand, will surely jeopardize the existence of the homestead provision itself.

With the profoundest respect always for the opinions of my respected associates on this Bench, my convictions of my own duty prohibit my permitting it to be understood that I yield assent now to the doctrine of *Vanstory* v. *Thornton.* In my humble opinion the principle there laid down is so clearly and palpably a misconception of the plain meaning and letter of the Constitution, which confers an " exemption," and nowhere intimates an intention to create a " homestead estate"—it is so evidently, in my judgment, a construction against the best interests alike of the homesteader and of the just rights of creditors—and will so certainly lead us into inextricable confusion and uncertainty (of which the present case is a fair example), that I still deem it the wisest course to adhere to what seems to me to be the plain meaning of the Constitution. In this way we will not only come to the construction held by all the other States having similar provisions, but we will place our feet on the solid rock. If the homestead right is, as the Constitution calls it, an exemption—a *cessat executio*—there will be no conflicting or confusing questions like the present which can arise.

In reasserting the views expressed in the dissenting opinion in *Vanstory* v. *Thornton,* I am but following the precedent set by CHASE, C. J., and MILLER and FIELD, JJ., of the United States Supreme Court, in *Washington* v. *Rouse,* 8 Wall., 441, in which, dissenting from the oft-repeated and most unfortunate decision of that Court to the effect that a Legislature could grant to a corporation an irrevocable and perpetual exemption from taxation, they say: " With as full respect for the authority of former decisions as ·belong, from teaching and habit, to Judges trained in the common law system of jurisprudence, we think that there may be questions," of constitutional construction, " which can never be finally closed by the decisions of a Court," when contrary to the clear meaning of the Constitution. That in such cases the ruling of the Court must ultimately conform to the Constitution, and that the Constitution does not bend to the mistaken ruling of the Court, for the Courts have no power to amend the Constitution. They further add that they were strengthened as to that view by the fact that there had been a series of dissents to the preceding decisions relied on by the majority. So, as to *Vanstory* v. *Thornton* (itself by a divided Court), it followed, it is true, the older case of *Adrian* v. *Shaw,* held by a Court of three Judges, but it disregarded the later opinion of a unanimous bench of five Judges in *Fleming* v. *Graham.*

It is not necessary to go over again the reasons set out for the dissent in *Vanstory* v. *Thornton.* They will speak for themselves. But one additional argument will be drawn from a most recent decision of this Court. In *Fulton* v. *Roberts,* 113 N. C., 421, it is held, affirming a long line of decisions, and in accord with the palpable meaning of the Constitution, in an opinion by Justice AVERY, that the homestead right ceases upon the removal of the homesteader from the State. If this is so when the homestead remains in the hands of the owner till his removal from the State, will it

not be so when it is in the hands of his grantee? Can the homesteader convey a greater or longer right to exempt the property than he has himself? Can he make it greater than the Constitution gave it to him by simply conveying it to another? Will not the exemption cease, and the land become liable to his judgment liens in force at the time of the conveyance, on the removal from the State of the homesteader, equally whether he owns the land or has conveyed it to another? Does not the homestead also terminate as to the homesteader who is in possession " owning and occupying" it at his death, leaving to his minor children and widow *their* right to claim it during infancy and widowhood? And if so, can he extend his rights and debar them of claiming a homestead in the land he leaves by having conveyed away a former homestead? In truth, *Fulton* v. *Roberts* recognizes the true basis of the homestead, *i. e.*, exemption in favor of an *occupant*. The Constitution gives an exemption to the owner and occupier if a " resident " of the State. It determines certainly upon the occupier ceasing to be a resident of the State. But it must equally determine upon his ceasing to be the owner and occupier. Each of the three requisites is named by the Constitution, and each is essential. It is true he can occupy it by a tenant, for the occupation of the tenant is the possession of the owner. But he cannot " own " it when he has conveyed it away, and such conveyance forfeits the right to exemption given only to the owner as surely as the removal to another State forfeits the exemption given only to a resident.

The homestead provision in different States and the judicial construction placed thereon vary much, but the decisions are uniform in this, that wherever a judgment is held to be a lien on the homestead, there, on a conveyance of the homestead, the lien can be enforced ; and wherever a judgment is held not to be a lien on the homestead, there a conveyance of it passes it exempt from liability. Thompson on Home-

steads, sections 398, 399. The only exception to this line of demarkation is *Adrian* v. *Shaw,* which recognizes that a judgment is a lien, whose enforcement the homesteader by his occupancy can postpone, but which also illogically holds that such right or postponement can be transferred to the grantee of the homestead lot, to be enjoyed as fully as if the grantee was the homesteader himself. Our Constitution, however, contemplated only the protection of the homestead to the debtor himself and his wife and children after him. It did not embrace his grantee.

With all deference to my colleagues, I am of the opinion, therefore—

1. That the homestead *right* is personal and indefeasible, save by death or removal from the State. That the conveyance of a lot of land over which a homestead right has been asserted neither alienates the right to assert it again as to another tract of land, nor does it go attached as a " quality " or " estate" with the conveyed land so as to enable the debtor to maintain two or more homesteads outstanding at one and the same time against his lawful creditors.

2. That even if this could be true, still the grantee could not hold longer than the homesteader himself could have held if he had remained in possession. When he dies or leaves the State, the homestead exemption would determine equally in the hands of his grantee as it would if it had remained in the grantor's possession. The grantee takes the land subject to the determination of the homestead exemption (when there are judgment liens at the time of the purchase), and the duration of the exemption in favor of the grantor cannot be altered or extended by his mere conveying the exempted property. When the exemption ceases by the homesteader ceasing to be a resident, the judgment liens on it come into vigor no more certainly than when by deed he ceases to be the owner of the lot.

I find no warrant in the Constitution for the proposition

that a debtor can abstract from liability for his debts as many homesteads as he sees fit, all at one and the same time. Nor do I find, on the other hand, any warrant there for the proposition that if a homesteader convey away the homestead lot forever thereafter, no matter how many other lots of land he may own, he and his minor children and widow at his death are forever debarred from claiming a roof to shelter them when it may be needed most. Yet, if the homestead is an "estate" or a "quality," to one of these two alternatives we must come. Either may be cruel and unjust, and either must bring upon us confusing and perplexing situations to solve. But I find nothing in the Constitution in regard to the homestead being a quality or an estate. But I do find it called in the Constitution an "exemption." Treated as an exemption, the way is smoooth and clear. No complications can possibly arise. While the homesteader has the constitutional requirements of "owning and occupying" the lot, and being a "resident" of the State, he has his "exemption," not exceeding one thousand dollars of realty, protected from sale for debt. There is the plain letter and meaning of the Constitution. When he ceases to be a resident (*Fulton* v. *Roberts, supra,* and cases cited), or ceases to own and occupy the lot (*Fleming* v. *Graham, supra*), in either case that lot ceases to be protected from the liens in force against it by docketed judgments at the time of the conveyance, or from enforcement of any indebtedness when there is removal from the State. Should he "own and occupy" another lot, he can, if a resident of the State, claim it as his homestead. Viewed as an estate or quality, a doctrine which is not found in the Constitution, but first "invented" in *Adrian* v. *Shaw,* the contradiction and confusion are interminable, and will become greater as we wander from the plain guidance of the Constitution. Viewed as an exemption, all difficulties vanish, and the constitutional homestead is beautiful in its very simplicity.

AVERY, J. (concurring): The Constitution (Art. 10, sec. 8) provides that nothing in that article shall " operate to prevent the owner of a homestead from disposing of the same by deed, but no deed made by the owner of the homestead shall be valid without the voluntary signature and assent of his wife, signified on her private examination according to law." The necessity for the joinder of the wife only arises where the homestead right attaches, or when he becomes the owner not only of land but of land devoted by law to the purposes of a homestead. *Hughes* v. *Hodges*, 102 N. C., pp. 250, 251. The first sentence in the section is inserted to exclude any possible conclusion that the homesteader could not alien his homestead, whatever that term may mean. We have numerous decisions to the effect that the homestead is not a determinable estate, but a determinable exemption. *Gheen* v. *Summey*, 80 N. C., 190; *Bank* v. *Green*, 78 N. C., 247; *Markham* v. *Hicks*, 90 N. C., 204. The legal effect of the Constitution and statutes " is simply to protect the occupant in the enjoyment of the land set apart as a homestead unmolested by his creditors." *Marcom* v. *Hicks, supra.* Two questions are suggested by the announcement of this principle in connection with the case at bar: 1. When does this exemption terminate? 2. What occupants are freed from molestation by the creditors of the homesteader until such determination?

In *Adrian* v. *Shaw*, 82 N. C., 474, the Court said: " The Constitution then vests the homestead right in the resident owner of the land and authorizes him to convey it. The vendee must take it with the same quality annexed that had attached in the possession of the vendor, that is, to be exempt from execution for the debts of the debtor *at least during his life,* for the homestead is a right annexed to the land and follows it, like a condition, into whosesoever hands, it goes without regard to notice." The quality of exemption annexed to the land must continue " at least " during the life of the homesteader, because that is the shortest time for which it is

operative, when the right of disposition is not exercised. In the hands of the homesteader and of his family, the liability of the homestead does not accrue till his youngest child arrives at the age of twenty-one years. It is conceded that the right of disposition is guaranteed to the homesteader by the Constitution, and that the homestead is not an estate but an exemption, which lasts according to circumstances—at least for the life of the original owner, and, when he has children, after his death till the youngest of them arrives at the age of twenty-one years. The language of section 3, article 10, is that " the homestead, after the death of the owner thereof, shall be exempt from the payment of any debt during the minority of the children or any one of them." If the Constitution in plain language confers the *jus dispon-endi* on the husband, with the joinder of the wife, of a home-stead, and the homestead has been defined to be not an estate, but a determinable quality of exemption, I confess my ina-bility to conceive of any principle upon which the Courts can interpolate a provision into the Constitution limiting the right of alienation to only such portion of the exemption as may be covered by the life of the owner. When Justice ASHE said for the Court that in such cases the estate of the vendee must last " at least " for the life of the vendee, the inference is irresistible that the earliest possible determina-tion of the exemption was to be fixed at the death of the alienor, with a possible extension of the right " after the death of the owner " during the minority of any surviving infant child. " When once established and impressed upon the land (said Justice RUFFIN in *Murchison* v. *Plyler*, 87 N. C., 82,) the right to the homestead cannot be waived. Nor can it in any manner be divested save as provided for in the Constitution, and then, too, on the possible rights of wife and children in the right of exemption observed and guarded by law." Here we find a clear recognition of the possible elongation for the benefit of wife and children of the exemp-

tion, and quite as distinct an acknowledgment that, while even the possible rights of wife and child could not otherwise be aliened or divested, they could be disposed of " as provided in the Constitution."

In *Simpson* v. *Houston*, 97 N. C., 346, Chief Justice SMITH said : " While the primary object of the exemption is to preserve a home for the insolvent and his family, there is nothing in the enactments of the State or the United States * * * to indicate that the interdict put upon the creditor is to cease by the debtor's transfer and leave the property at once exposed to sale under execution. * * * The value of what is assigned consists in the right to possess and enjoy it, as the assignor could, for the same term and under the same securities." The doctrine announced in *Adrian* v. *Shaw, supra,* and reiterated when that case was again considered on rehearing (84 N. C., 832), as well as in *Baker* v. *Leggett,* 98 N. C., 304, was that while the homestead right was conferred for the benefit of residents, and might be abandoned by the removal of the occupant of the land from the State, if no right in favor of others had attached, yet when the right of homestead was conveyed in conformity to the requirement of the Constitution, the alienee acquired a vested right which could not be divested by any subsequent act of the alienor. The case of *Ladd* v. *Byrd,* 113 N. C., 472, is exactly in point. The Court in that case, after adverting to the recognition by the Court in *Lowdermilk* v. *Corpening,* 92 N. C., 333, and in *Corpening* v. *Kincaid,* 82 N. C., 202, of the right of the creditor, suing even upon an old debt, to favor the debtor by selling only the reversionary interest accruing after the expiration of the exemption, held expressly that the purchaser of the reversionary interest must show affirmatively, not only that the homesteader had died, but that there was no elongation of the exemption in favor of an infant child.

The dictum announced in *Fleming* v. *Graham*, 110 N. C.,

374, was expressly so characterized in *Vanstory* v: *Thornton*, 112 N. C., 196, and the doctrine of *Adrian* v. *Shaw* upon the original and the rehearing, that the conveyance of a homesteader, with the joinder of his wife, passed the determinable exemption attached to the land in the hands of the debtor, was reaffirmed. The same principle had been announced in unmistakable terms by Justice MERRIMON in *Jones* v. *Britton*, 102 N. C., 166, before the dictum in *Fleming* v. *Graham* was written, and before it was expressly held by the whole Court *nemine dissentiente* in *Ladd* v. *Byrd, supra*, that the right of the holder of the reversionary interest accrued, not upon the death of the homesteader and the failure of a minor child to set up any claim, but upon a showing, in the assertion of such right, that there was no minor child.

While it is admitted that we are confronted by these direct authorities as to the effect of a conveyance by a homesteader and his wife, it is contended that a long line of decisions shall be overruled in order to avoid some quicksand that has never been encountered during the twenty-six years in which our exemption laws have been enforced. The case of *Long* v. *Walker*, 105 N. C., 90, is adverted to as one in which a previous ruling of the Court, in reference to our homestead law, was overruled. In that case the Court said (at page 107): " The general policy of adhering to the declared opinions of the Court is subject to the limitation that inadvertent decisions should be overruled, unless they have been acted on for a long time and property has been bought by reason of the public faith in the stability of the principles decided in them." The decision was then based upon an argument intended to show that the overruled case could not have become a rule under which property had vested. It is familiar learning that while it is safer generally to adhere to precedent, yet it is the duty of a Court to overrule erroneous decisions when they operate perniciously, if no property

rights have been founded upon them, but to preserve them in their integrity, however erroneous, if they have become a rule of property under which contracts have been framed and titles acquired.    23 Am. and Eng. Enc., 28.

I do not concede that any case has ever arisen where it became necessary to decide whether a resident of North Carolina could acquire and dispose of more than one homestead, nor do I admit that a majority of the Court are committed to any theoretical opinion upon that question.   When the point is properly presented, grave reasons may readily suggest themselves for standing by the long line of decisions, beginning with *Adrian* v. *Shaw*, filed in January, 1880.   The most potent and serious of them is that during fourteen years homestead rights have been freely offered in the market on the faith of the stability of our decisions, and probably hundreds of purchasers have bought with an eye to the chances of life of the owners of homesteads and the probabilities as to minor children.   A constitutional inhibition prevents a Court from divesting property out of one person in whom it is rightfully vested, and transferring the title to another by its decrees.   The principle that underlies this fundamental provision of law makes it injustice, if not judicial robbery, on the part of the Court to arbitrarily so modify its decisions as to destroy titles which are valid under such overruled opinions.

But if hereafter some person should attempt to indulge in the luxury of acquiring a series of homesteads, though we have no judicial knowledge that any resident of the State has done so during the last twenty-six years, and should succeed in having them laid off in different counties to which he had migrated successively, innocent purchasers of such rights would receive hard measure under the new rule insisted on as correct.   In this country, where it is deemed so essential to commercial prosperity that property of all kinds should pass freely from one to another, and, that in

order to facilitate that object, no lien should attach to real estate that cannot be discovered by a diligent examination of public records, it would be startling to the legal profession and to dealers in real estate to announce that, after a careful searching of such records, a purchaser might in many instances be still unsafe, unless he should trace the proposed vendor, by the aid of detectives, through all of his wanderings in different counties of the State for a score of years, in order to ascertain whether the allotment of some other homestead to him in another county had disabled him from making a valid title to that offered for sale. It is always best, when supposititious cases are conjured up as an argument for disturbing settled principles, to wait till we reach the stile before attempting to jump it.

This Court, in a number of decisions heretofore rendered, has adverted to the fact that it is not safe to follow decisions of Courts of other States where no lien whatever attaches to the homestead in the hands of the person to whom it is allotted. I concur in the conclusions reached by my brother BURWELL in delivering the opinion of the Court.