S. BEVAN et al. v. O. L. ELLIS et al.

*Homestead—Allotment, where Filed—Constructive Notice— Judgment Lien on Allotted Homestead—Statute of Limitation.*

1. It is not necessary to have the appraisers' return of the allotment of the homestead registered in the office of the Register of Deeds of the County in which the homestead is situated, (provided it is filed in the

judgment roll of the action in which the judgment was rendered) in order to make the judgment lien valid and binding on the homestead until the homestead estate shall expire. The filing of the return in the judgment roll, in compliance with Section 504 of *The Code*, is constructive notice to all who have dealings with the homesteader concerning the homestead.

2. The lien of a judgment on land in which a homestead has been duly allotted does not cease upon the expiration of ten years from the date of the judgment but continues during the continuance of the homestead estate, notwithstanding a sale and conveyance of the land by the homesteader. (CLARK, J., dissents *arguendo*).

CIVIL ACTION tried before *Robinson, J.,* and a jury at January Term, 1897, of FRANKLIN Superior Court. The action, commenced on the 7th of January, 1896, was to subject to the payment of plaintiff's judgment rendered and docketed in 1872, land which had been allotted to the judgment debtor as a homestead but which had been conveyed by the judgment debtor thereafter and by *mesne* conveyances had been acquired by defendants.

It was admitted on the trial:

That Edgar Miller is the surviving partner of Samuel Bevan and Company, and that R. A. Speed died intestate in the same county of Franklin in 1885, and that the defendant O. L. Ellis was duly appointed and qualified as his administrator, and is still such administrator.

That R. A. Speed, Jr., is the son of R. A. Speed, Sr., and that the Perry defendants are the infant children of Wm. Perry deceased. And being without general or testamentary guardian, that B. B. Massenburg has been appointed and appears in this action as their guardian *ad litem.*

That the widow of R. A. Speed, Sr., who survives him, is seized and possessed of a homestead in her own right, worth a great deal more than $1,000.

That on the 3rd day of March, 1871, R. A. Speed executed his bond to the plaintiff in the sum of $457, in which he

covenanted not to claim any homestead and personal property exemption against the collection of said bond.

That the plaintiff brought suit on said bond and on account against said R. A. Speed for $95.39, and obtained judgment against the said R. A. Speed at the September Term, 1872, of Franklin Superior Court for $552.54, with interest on $457 from March 3rd, 1871, and on $95.39 from February 9th, 1872, until paid, and the costs of this action.

That on the 22nd day of June, 1873, the plaintiff procured execution to issue on said judgment, and the defendant R. A. Speed claimed his homestead exemption and the Sheriff summoned appraisers to allot and set apart to him his homestead. The appraisers allotted to him as his homestead all the land he owned to-wit, 379 acres on Sandy Creek, adjoining the lands of J. F. Jones, Kindred Gupton and others. The Sheriff returned the report of the appraisers to the next term of the Court, and the execution also, with the endorsement: "Nothing found in excess of the homestead exemption to satisfy said judgment."

That upon the coming in of the report of the appraisers and the return of the execution, the plaintiff moved to set aside both as to so much of the judgment as was recovered on the bond for $457, upon the ground that the defendant in the action having waived, upon the face of the bond, his right to a homestead, was not entitled thereto. The Court overruled the motion, and the plaintiff excepted and appealed to the Supreme Court. The Supreme Court approved the judgment of the lower Court. (See Volume 74 of the Supreme Court Reports.)

That the said allotment of the homestead embraces the whole of the land mentioned in the complaint, but that while the same was returned to the Clerk of the Court and filed with the papers in the case, yet the said return was not recorded in the registry of Franklin County, as by the Stat-

ute provided, until the 22nd day of January, 1897—long after this suit was instituted, but before the trial.

That on the 21st day of November, 1878, R. A. Speed and wife conveyed in fee, for a money consideration, to J. J. Davis all their right, title and interest in and to the land, described in the complaint as "a tract of land containing 309 acres," which said conveyance is recorded in the Register's office of Franklin County, Book 79, at page 485. This deed was introduced in evidence.

That theretofore, as set out in said deed, R. A. Speed and wife had mortgaged a part of said land to Thomas White, guardian, and had conveyed the other part in fee to W. H. Davis, which said deeds were dated respectively, March 22, 1877, and March 25, 1876, and were recorded in Book 45, at page 263, and in Book 45, at page 66, as set out in said deed of R. A. Speed and wife to J. J. Davis.

These deeds were introduced in evidence.

That thereafter said J. J. Davis paid off the debt to Thos. White, guardian, and also acquired the title to said land conveyed in said deed to W. H. Davis.

That on the 8th day of January, 1883, the said J. J. Davis conveyed 208 acres of the said land to R. A. Speed, Jr., and that on the same day the said R. A. Speed, Jr., executed to the said Davis a mortgage deed, whereby he conveyed the said land to secure the purchase money for the same. The said deed and mortgage are recorded in the said Register's office in Book 60, at page 526. The said deed and mortgage were introduced in evidence.

That thereafter the said J. J. Davis assigned and endorsed for value the said note and mortgage, when past due, to the said Raleigh National Bank, as collateral to secure a note executed by him to said bank for borrowed money, as appears from the record. That thereafter J. J. Davis conveyed the balance of said land, to-wit, 108 acres, to J. F. Jones,

who is now (and had been for more than seven years before the beginning of this action) in the actual possession thereof.

That since the execution of the said deed to the said W. H. Davis, the said W. H. Davis and those claiming under him, have been in continuous possession of the land described in the said deed, and claiming it under said deed, until the execution of the said deed by R. A. Speed and wife to J. J. Davis; and that thereafter the said J. J. Davis, and those claiming under him, have been in continuous possession of the two said tracts of land, to-wit, the one mortgaged to Thomas White, guardian, and the one conveyed to W. H. Davis, claiming the same under their said deed as their own and under known and visible boundaries. That since the execution of said deed from J. J. Davis to R. A. Speed, Jr., the said R. A. Speed, Jr., and those claiming under him, have been in continuous possession of said tracts of land, claiming the same under said deed as their own, and under said known and visible boundaries.

The Court, upon the request of the defendants, instructed the jury, that inasmuch as the allotment of the homestead was not registered in the office of the Register of Deeds of Franklin county until the 21st day of January, 1897; and that inasmuch as it was admitted that the several defendants had entered upon the lands described in the complaint, under the deeds executed to them, which were color of title, and had been in possession of said tracts of land under known and visible boundaries for seven years before the beginning of this action, that they should answer the issue, "Yes."

The jury responded accordingly, and the plaintiff excepted.

There was a motion for a new trial by the plaintiff. Motion overruled and plaintiff excepted and appealed.

*Mr. C. M. Cooke,* for plaintiffs (appellants).

*Messrs. F. S. Spruill, W. M. Person* and *Shepherd & Busbee,* for defendants.

MONTGOMERY, J.:    At the Fall Term, 1872, of FRANKLIN Superior Court, Samuel Bevan, William A. Williams and Edgar Miller, trading under the firm name of Samuel Bevan & Co., obtained a judgment against R. A. Speed for money and costs, and under an execution issued on the judgment, returnable to the Spring Term, 1873, of that Court, the Sheriff had, through appraisers, the homestead of the defendant allotted to him.    The allotment embraced the whole of the debtor's real estate and was returned by the Sheriff to the Clerk of the Court soon after it was made, and it was filed by the Clerk at that time in the judgment roll in the case where it has been ever since.    The Clerk of the Court, however, did not send a certified copy of the homestead return to the Register of Deeds, nor was the same registered until after the commencement of this action.

The defendant homesteader is dead, his widow owns a homestead in her own right, and the youngest child is more than twenty-one years old, and Edgar Miller, as surviving partner of the original plaintiffs, brought this action on the 7th day of January, 1896, to subject the homestead to the payment of the judgment of 1872 as a first lien.    The defendants claim title to the land, which was the homestead, under *mesne* conveyances and set up in their several answers back to deeds from Speed and wife of dates 1876, 1877, 1878; and aver that they bought without notice of the allotment of the homestead—the allotment not having been registered in the office of the Register of Deeds.

Two questions are presented in the record for our decision. The first is whether it is necessary to have the appraisers' return of the allotment of the homestead registered in the office of the Register of Deeds of the county in which the·

homestead is situated, and also to have it filed in the judgment roll of the action in which the judgment was had, in order to make the judgment lien valid and binding on the homestead until the homestead estate shall expire; and the second is whether the lien of a judgment procured in 1872, the homestead having been duly allotted, continues only during the ten years next after the rendition of the judgment or whether it lasts during the continuance of the homestead estate.

We will now take up, in order, the discussion of the first question.

*The Code*, Section 504, which is Section 4 of Chapter 137 of the Laws of 1868–'9, requires that "The appraisers shall then make and sign in the presence of the officer a return of their proceedings, setting forth the property exemption, which shall be returned by the officer to the Clerk of the Court for the county in which the homestead is situated and filed with the judgment roll in the action, and a minute of the same entered on the judgment docket, and a certified copy thereof under the hand of the Clerk shall be registered in the office of the Register of Deeds for the county. . . . " The defendants' counsel cited the case of *Smith* v. *Hunt*, 68 N. C., 482, as an authority for the indispensable necessity of the registration in the office of the Register of Deeds of the homestead allotment and return. That case did not present that point. There, the homestead and personal property exemptions appeared to have been allotted and appraised by petition before a Justice of the Peace, and the only point presented arose upon the complete failure of the return to show a descriptive list of the personal property which was set apart as the personal property exemption of the debtor. The return of the appraisement and allotment had been duly registered, but because of a lack of description of the personal property in the allotment, the proceeding was in that case held void by this Court.

BEVAN v. ELLIS.

Registration in the office of the Register of Deeds is clearly indispensable in cases where the allotment of the homestead exemption is made on the petition of the homesteader, as was the case in *Smith* v. *Hunt, supra*, for the reason that there is no other method which could reasonably give notice of the allotment.

In *Gully* v. *Cole*, 96 N. C., 447, the Judge who delivered the opinion for the Court said: "The report of the allotment or appraisal whether made by the Sheriff and the appraisers simply, or by confirmation of the Superior Court in term time, is required to be registered, the object being to give notice, &c." We do not understand that language to mean that, where the report of the allotment of the appraisers has been filed with the judgment roll, a failure to register the same in the Register's office would make the allotment void. That point however was not raised in *Gully* v. *Cole, supra*, and the declaration of the Judge was purely a dictum, if it can be construed into meaning that registration was absolutely necessary to the validity of the allotment and to the attacking of the lien under the judgment where the return of the appraisers had been filed with the judgment roll in the action.

The only question before the Court in the last mentioned case was whether a homestead could be reallotted in different proceedings without proof of fraud or other irregularities.

The object of the law in requiring the return of the appraisers to be filed with the judgment roll in the action and registered in the office of the Register of Deeds is, of course, to give sufficient notice to all persons who may have transactions with a debtor concerning the land embraced in the homestead, that there is or was an encumbrance by judgment lien upon it, which would continue until the expiration of the homestead estate unless sooner discharged by payment. The object of the notice is not to inform the

creditors of the homesteader that the homestead, after it is allotted, cannot be sold under execution for his debts; because the creditors are presumed to know that that was so even before the homestead is allotted. We are of the opinion that the requirements of the law are sufficiently complied with wherever it appears that the return of the appraisers of the allotment is filed in the judgment roll in the action. The law, Section 504 of *The Code*, requires the return of the appraisers to be filed with the judgment roll in the action, and compliance with that requirement is constructive notice to all who may have dealings with the homesteader concerning the homestead estate and all such persons must at their peril, examine the judgment roll and all that it contains. If upon such examination of the judgment roll the return of the appraisers is found there, then there is no need to examine the registry in the office of the Register of Deeds.

The defendants in this action, if they had examined the judgment roll in *Bevan* v. *Speed, supra,* would have found the appraisers' return of the allotment of the defendant's homestead.

We will now discuss the other question, whether the lien of a judgment procured in 1872, the homestead having been duly allotted, continues only during the ten years next after the rendition of the judgment, or whether it lasts during the continuance of the homestead estate. There have been numerous decisions of this Court from *McDonald* v. *Dickson*, 85 N. C., 248, in which judgments have been considered liens upon the homestead, until the homestead estate shall expire, wherever the homestead has been actually allotted under such judgments docketed. In *Mebane* v. *Layton*, 89 N. C., 396, the Court said "but the statute—Bat. Rev. Chapter 55, Section 26, in force at the time of the supposed sale (about 1881) forbids in terms the levy and sale under execution for any debt of the reversionary interest in

BEVAN *v.* ELLIS.

lands included in a homestead until *after the termination* of the homestead interest itself. The purpose of this Act was not to enlarge the homestead or to deprive the creditor of the estate or property after the homestead right should be at an end, but it was to have the property preserved and the right of the creditor to have the same sold postponed until it might be sold for its reasonable value." That language, beyond question, shows that the Court were of the opinion that the effect of the Statute (Bat. Rev. Chapter 55, Section 26) when the requirements of the law as to the actual allotment of the homestead had been complied with, was to continue the lien of the judgment beyond ten years and until the homestead estate had expired. The same idea, in language as clear, is expressed in *Morton* v. *Barber*, 90 N. C., 399; *Rankin* v. *Shaw*, 94 N. C., 405. In *Wilson* v. *Patton*, 87 N. C., 318, the homestead was not set apart because some of the judgments were recovered upon notes dated prior to the 1st, January 1868, and the whole land was sold with the debtor's consent. This Court held as to the distribution of the proceeds of the sale, that, after the executions which had been issued on the judgments obtained on debts due before January 1868, should be paid, the homesteader should be entitled to receive the balance (not to exceed $1,000.) but to hold it only during his life, the remainder to be subject to the lien of the judgment as if it was land, upon his giving bond and security to secure the return of the amount, upon his death, to be applied to such judgment or judgments as should remain unsatisfied, according to priority of docketing. In *Vanstory* v. *Thornton*, 112 N. C., 196, a distribution of funds arising as in the case of *Wilson* v. *Patton*, *supra*, was ordered by this Court, the Court recognizing the continuation of the lien of the judgment, when the allotment had been made according to law, until the expiration of the home-

121—30

stead estate. In *Jones* v. *Britton*, 102 N. C., 166, the Court said: "The latter (the creditor) when the exemption from sale is over should find the property not exhausted and rendered valueless but substantially as it was when the exemption began. . . . The law expressly gives the judgment creditor a lien on the homestead. This lien is not meaningless and nugatory; it implies that the creditor shall have the property devoted to the satisfaction of his judgment debt as far as will be necessary when and as soon as the exemption of it from sale shall be over. In *Rogers* v. *Kinsey*, 101 N. C., 559, the Court said: "This legislation (Acts 1885, Ch. 359) recognizes the existence of the lien upon the land subject to exemption for the limited period and the right to enforce which in an appropriate manner arises at its expiration." In *Stern* v. *Lee*, 115 N. C., 426, the Court said in speaking of judgment creditors where the homestead had been duly allotted: "By the law they are given a lien. The lien continues in force notwithstanding the debtor's conveyance, unimpaired by the law. The enforcement of their liens by sale is postponed until the determination of the homestead right."

It is true that the Code Commissioners failed to bring forward in *The Code*, Section 26, Chapter 55 of *Battle's Revisal*, and this Court held in *Cobb* v. *Hallyburton*, 92 N. C., 652, that that statute "ceased to operate, because it was not brought forward, on and after the first of November, 1883, (the date when *The Code* went into effect) when the Statute of Limitations again began to run for the protection of the debtor's estate against the judgment." But the General Assembly of 1885 restored the lien of judgments on the homestead estate and provided in Chapter 359 of the Acts of that session that the Statute of Limitations should not run against any payments (judgments) during the existence of such homestead. When the Statute (*Battle's Revisal*, Chap-

BEVAN *v.* ELLIS.

ter 55, Section 26), was repealed by the failure of the Code Commissioners to bring it forward into *The Code*, the lien of the judgment in the case before us was complete, the Statute of Limitations having run against it only for about two years when the Act of 1885, as we have said, prevented again the running of the Statute of Limitations against it during the existence of the homestead estate.

The interesting question as to the restoration of the lien of judgments against the homestead, so fully discussed in *Leak* v. *Gay*, 107 N. C., 482, need not be considered here for it does not arise, the judgment lien in the case before us never having expired.   There is error in the ruling of the Court below.

New trial.

CLARK, J., dissenting:   I concur with the view that it is sufficient that the return of the allotment of the homestead is filed in the judgment roll.   The homestead being by the terms of the Constitution, "exempt from sale under execution" against the "owner and occupier" thereof, the homestead right is merely a *cessat executio* and hence the proper place to file the allotment is in the judgment roll.   It is true that *The Code*, Section 504, further requires the allotment to be registered but, as the Court in this case holds, this latter is merely directory.   It would, on the contrary, be mandatory if the homestead was an estate.   Acts 1885, Chapter 147. It was held an estate in *Adrian* v. *Shaw*, 82 N. C., 474, which was sustained by a bare majority in *Stern* v. *Lee*, 115 N. C., 426, but that it is a mere determinable exemption has been held by a unanimous Court in *Fleming* v. *Graham*, 110 N. C., 374, and incidentally in *Allen* v. *Bolen*, 114 N. C., 560. It is also recognized as "a mere stay of execution, nothing more," by Shepherd, J., in *Jones* v. *Britton*, 102 N. C., on page 102; by Bynum, J., in *Bank* v. *Green*, 78 N. C., 247, and in other cases cited in *Thomas* v. *Fulford*, 117 N. C., at

page 679.   In the latter case, which is the last declaration of the Court on this important subject, the majority of the Judges, "three out of five," held that "the homestead is not an estate but a determinable exemption."   117 N. C., Montgomery, J., at page 682; Avery, J., at page 686, and Clark, J., at page 678.   Adhering to this last exposition of the Court upon this much debated subject, it is clear that, upon the homesteader ceasing to "own and occupy" the allotted land, the exemption as to it ceased and determined just as if he had removed out of the State.   *Fulton* v. *Roberts*, 113 N. C., 421.   It would seem, therefore, under the ruling of the majority in the last case on the subject, that "the determinable exemption" having ceased by the conveyance of the realty by the homesteader, in the mode required by the Constitution, Article X, Section 8, "by deed with privy examination of the wife," all right to exemption ceased with that deed, and the judgment creditor had the right to enforce his lien.   Without further citation, reference is made to *Thomas* v. *Fulford*, 117 N. C., at page 678; *Stern* v. *Lee*, 115 N. C., at pages 433–447, and *Vanstory* v. *Thornton*, 112 N. C., at pages 211–223.   The two last citations are to dissenting opinions, it is true, but they follow the unanimous decision in *Fleming* v. *Graham*, 110 N. C., 374, and are supported by the reasoning of a majority of the Court in its last enunciation in *Thomas* v. *Fulford*, *supra*.

The exemption from execution having ceased upon the conveyance of the allotted homestead by the husband and wife with her privy examination, the judgment creditor should have taken steps to enforce his lien.   Not having done so, his lien expired in ten years thereafter and the purchaser holds the realty freed from the judgment lien.   I think the judgment should be affirmed but not for the reasons given by the Court below.